1           UNITED STATES DISTRICT COURT OF OHIO
                       NORTHERN DISTRICT
2                      WESTERN DIVISION

3   ROBIE GASTON,                )
                                 )
4                                )
            Plaintiff,           )
5                                )
        vs.                      )       Case No.
6                                )   3:18-CV-02642-JJH
    FINANCE SYSTEM OF TOLEDO,    )
7   INC.,                        )    Judge Helmick
                                 )
8                                )
            Defendant.           )
9

10

                        - - -
11

12

                DEPOSITION OF ROBIE GASTON
13

14

         DATE:       September 10, 2019 at 10:02 a.m.
15

         PLACE:      Collins Reporting Service, Inc.
16                   615 Adams Street
                     Toledo, Ohio
17

         REPORTER:   Casey G. Schreiner, RMR-RDR
18                   Notary Public

19

20                      - - -

21

22

23

24

1    APPEARANCES:

2         On behalf of the Plaintiff:

3              ATLAS CONSUMER LAW:
               Teddy Hatzidimitriadis (via web
4              conference)
               Nathan Volheim (via web conference)
5              2500 South Highland Avenue
               Suite 200
6              Lombard, Illinois 60148
               (630) 575-8181

7

8         On behalf of the Defendant:

9              LAW OFFICES OF JAMES S. NOWAK:
               James S. Nowak
10             4808 North Summit Street
               Toledo, Ohio 43611
11             (419) 726-2605

12

          On behalf of the Defendant:
13
               LAW OFFICE OF BOYD W. GENTRY:
14             Boyd W. Gentry (via web conference)
               4031 Colonel Glenn Highway
15             Beavercreek, Ohio 45431
               (937) 839-2881

16

17   ALSO PRESENT:

18             Nancy Quiroga (via videoconference)
               Randy Parker (via videoconference)

19

20

                         - - -
21

22

23

24

I N D E X
EXAMINATION

| Witness Name | | Page | Line |
|---|---|---|---|
| ROBIE GASTON | | | |
| Examination By Mr. Gentry ............. | | 5 | 5 |
| Examination By Mr. Volheim ............ | | 68 | 23 |
| Re-Examination By Mr. Gentry .......... | | 73 | 11 |

EXHIBITS

| Exhibit | Description | Page | Line |
|---|---|---|---|
| DX A | Letter – Finance Systems to .... Gaston – 1-15-18 | 7 | 6 |
| DX B | Letter – Finance Systems to .... Gaston – 4-5-18 | 7 | 6 |
| DX C | Toledo Municipal Court Judgment Entry | 59 | 14 |

OBJECTIONS

| By | Page | Line |
|---|---|---|
| Mr. Gentry ................................ | 72 | 9 |
| Mr. Gentry ................................ | 72 | 19 |
| Mr. Hatzidimitriadis ...................... | 9 | 14 |
| Mr. Hatzidimitriadis ...................... | 11 | 9 |
| Mr. Hatzidimitriadis ...................... | 12 | 3 |
| Mr. Hatzidimitriadis ...................... | 14 | 6 |
| Mr. Hatzidimitriadis ...................... | 14 | 14 |
| Mr. Hatzidimitriadis ...................... | 15 | 2 |
| Mr. Hatzidimitriadis ...................... | 15 | 9 |
| Mr. Hatzidimitriadis ...................... | 15 | 20 |
| Mr. Hatzidimitriadis ...................... | 16 | 3 |
| Mr. Hatzidimitriadis ...................... | 17 | 5 |
| Mr. Volheim ............................... | 22 | 20 |
| Mr. Volheim ............................... | 24 | 22 |
| Mr. Volheim ............................... | 26 | 17 |
| Mr. Volheim ............................... | 26 | 24 |
| Mr. Volheim ............................... | 27 | 8 |
| Mr. Volheim ............................... | 30 | 5 |
| Mr. Volheim ............................... | 30 | 18 |
| Mr. Volheim ............................... | 31 | 1 |
| Mr. Volheim ............................... | 32 | 11 |
| Mr. Volheim ............................... | 33 | 18 |
| Mr. Volheim ............................... | 40 | 24 |
| Mr. Volheim ............................... | 41 | 16 |
| Mr. Volheim ............................... | 45 | 18 |
| Mr. Volheim ............................... | 46 | 5 |
| Mr. Volheim ............................... | 46 | 20 |

| | | |
|---|---|---|
| Mr. Volheim ................................. | 47 | 18 |
| Mr. Volheim ................................. | 48 | 4 |
| Mr. Volheim ................................. | 50 | 8 |
| Mr. Volheim ................................. | 55 | 8 |
| Mr. Volheim ................................. | 55 | 23 |
| Mr. Volheim ................................. | 56 | 6 |
| Mr. Volheim ................................. | 57 | 19 |
| Mr. Volheim ................................. | 58 | 17 |
| Mr. Volheim ................................. | 62 | 6 |
| Mr. Volheim ................................. | 63 | 17 |
| Mr. Volheim ................................. | 74 | 7 |
| Mr. Volheim ................................. | 75 | 2 |

- - -

```
 1                    ROBIE GASTON,
 2   a Plaintiff herein, called by the Defendant as if upon
 3   Examination, was by me first duly sworn, as
 4   hereinafter certified, deposed and said as follows:
 5                    EXAMINATION
 6   BY MR. GENTRY:
 7           Q.    Good morning.  My name is Boyd Gentry.
 8   I'm an attorney.  I represent the defendant in this
 9   case.
10                 Could you give us your full name, please.
11           A.    Robie Gaston.
12           Q.    How do you spell that, please?
13           A.    R-o-b-i-e, G-a-s-t-o-n.
14           Q.    Do you have a middle name?
15           A.    No.
16           Q.    How old are you, Mr. Gaston?
17           A.    55.
18           Q.    Where do you live?
19           A.    5923 Walnut Circle Drive, F-11, Toledo,
20   Ohio, 43615.
21           Q.    How long have you lived there?
22           A.    Going on two years.
23           Q.    Where did you live before that?
24           A.    6543 Walnut Circle Drive -- excuse me.
```

1   Oh, shucks, what was the -- my memory is bad -- Dorr

2   Street, Apartment 43, Toledo, Ohio, 43615.

3          Q.   Now, I see that you had to look at a

4   piece of paper to remember that address.

5               What was the paper you're looking at?

6          A.   The paper that my attorney told me to

7   bring, which is from Finance Systems.

8          Q.   Okay.  You have a couple papers there.

9   Could you share that, please, with Jim, who is seated

10  to your right.

11              MR. NOWAK:  May I look at those

12              documents?  Thank you.

13              I'm being handed the documents to

14              look at, and I'm unfolding them.

15              The documents appear to be copies of

16              letters; is that correct?

17              THE WITNESS:  Yes.

18              MR. NOWAK:  And they appear to be --

19              it's dated 1-15-18; is that correct?

20              THE WITNESS:  Yes.

21              MR. NOWAK:  And the other document

22              is dated 4-05-18; is that correct?

23              THE WITNESS:  Yes.

24              MR. NOWAK:  Boyd, do we want to make

```
 1            copies of these documents and mark them

 2            as exhibits?

 3                MR. GENTRY:  Yes, that would be

 4            great.

 5                (Discussion had off the record.)

 6                (Court Reporter marked

 7            Defendant's Exhibits A and B.)

 8   BY MR. GENTRY:

 9       Q.    We took a brief recess there to mark the

10   documents that you brought with you, Mr. Gaston, and

11   it appears that those documents are copies of the

12   originals.

13            Did you bring the originals with you?

14       A.    No.

15       Q.    Where are the originals of these

16   documents?

17       A.    I have no idea.  Probably -- probably

18   with you guys.

19       Q.    Could you look at the documents that you

20   brought with you, please.

21       A.    They came from Finance Systems.

22       Q.    Okay.  Is it a letter with a date on it?

23       A.    Yes.

24       Q.    What's the date on that?
```

1     A.    1-15 of '18, and then the other one is
2  4-5 of '18.
3     Q.    Do they have a mark on the bottom right
4  that says Gaston 00002 and then No. 3?  Do you see
5  that?
6     A.    Yeah.  One ends in 1 and one ends in 2.
7          MR. NOWAK:  Which one is which?  Can
8          you identify it by this number here, what
9          that is, Exhibit B is?
10          THE WITNESS:  Exhibit B ends in 1,
11          Exhibit 2 ends in A [sic].
12  BY MR. GENTRY:
13     Q.    That marking there where it says your
14  name, Gaston, and then a string of zeroes, 1, 2, and
15  3, who put that number on there?
16     A.    I have no idea.
17     Q.    Have you seen these -- when was the first
18  time that you saw these documents?
19     A.    I got these -- my attorney printed these.
20  My attorney printed this off.  My attorney sent me
21  these.
22     Q.    Did you get these in the mail from your
23  attorney?
24     A.    Pardon me?

1          Q.    Did you get these in the mail from your

2    attorney?

3          A.    No.

4          Q.    Did your attorney e-mail them to you?

5          A.    Yes.

6          Q.    What e-mail address did you use to

7    receive this?

8          A.    My e-mail address.

9          Q.    What's your e-mail address?

10         A.    gastonrobie64@gmail.com.

11         Q.    When did you receive that e-mail with

12   these documents?

13         A.    Yesterday.

14               MR. HATZIDIMITRIADIS:  Object.

15         This is Mr. Hatzidimitriadis.  I have to

16         object to some of these questions, so

17         before you answer, if you can just allow

18         me a couple seconds to do so, that would

19         be helpful.

20               But you may go ahead and answer that

21         question.

22               THE WITNESS:  Okay.  Yesterday.

23   BY MR. GENTRY:

24         Q.    Had you seen these documents before

1   yesterday?

2          A.    Yes.

3          Q.    When did you first see these documents?

4          A.    I have no idea.  I don't remember.

5          Q.    How did your lawyer get them?

6          A.    I sent them to him.

7                MR. HATZIDIMITRIADIS:  He has no

8                idea how he's supposed to answer that

9                questions.

10               If you understand the question,

11               Mr. Gaston, you may answer it.

12  BY MR. GENTRY:

13         Q.    How did you send them to your lawyer?

14         A.    I don't remember.

15         Q.    Who is your lawyer?

16         A.    That was almost a year ago.

17         Q.    What is your lawyer's name?

18         A.    They originally went to -- they

19  originally went to Amy.

20         Q.    What's Amy's last name?

21         A.    I don't know.  She has a funny last name.

22         Q.    What city is she in?

23         A.    Chicago, Illinois.

24               Some of these questions are ridiculous.

```
 1                    MR. HATZIDIMITRIADIS:  Boyd, where
 2              are you going with these questions?  I'm
 3              not really objecting, because I don't see
 4              how you'll get discovery information from
 5              this; but, to be honest, again, I think
 6              it's just wasting time at this point.
 7   BY MR. GENTRY:
 8         Q.    So how did you find Amy?
 9                    MR. HATZIDIMITRIADIS:  Objection.
10                    THE WITNESS:  A friend of a
11              friend.
12                    MR. HATZIDIMITRIADIS:  Mr. Gaston,
13              you don't have to answer these questions.
14                    THE WITNESS:  Okay.
15                    MR. HATZIDIMITRIADIS:  You ask
16              pertinent questions, or I'm going to end
17              the deposition right now.  You're not
18              asking any pertinent questions about the
19              case right now.
20   BY MR. GENTRY:
21         Q.    Mr. Gaston, how did you first come into
22   contact with -- let me ask, is Amy a lawyer?
23         A.    I would imagine she's a lawyer.
24              Are you a lawyer?
```

```
 1            Q.    How did you come to contact Amy in

 2   Chicago?

 3                  MR. HATZIDIMITRIADIS:  Objection.

 4                  Attorney-client privilege.

 5                  You do not have to answer that,

 6                  Mr. Gaston.

 7                  Boyd, please, we need to move on.

 8                  If you have questions about the letter

 9                  specifically, you may ask him that;

10                  otherwise, these questions are

11                  irrelevant.

12                  MR. GENTRY:  Counsel, I would ask

13                  you to not make speaking objections or

14                  speeches on the record.  I'm trying to

15                  get through a deposition, please.  This

16                  is highly relevant material.  This is

17                  absolutely admissible.  Please don't

18                  interrupt anymore.

19                  MR. HATZIDIMITRIADIS:  It's

20                  attorney-client privilege.  These are

21                  communications with his attorney; thus,

22                  they are protected --

23                  MR. GENTRY:  I am not --

24                  MR. HATZIDIMITRIADIS:  -- under
```

1           the --

2                MR. GENTRY:  -- asking about

3           attorney-client privileged

4           communications.  I have not --

5                MR. HATZIDIMITRIADIS:  The

6           communications --

7                MR. GENTRY:  -- asked him the

8           contents of any communications.

9                   THE COURT REPORTER:  Folks, you

10          have to speak one at a time.

11               MR. HATZIDIMITRIADIS:  You're

12          asking --

13               MR. GENTRY:  I would like --

14               MR. HATZIDIMITRIADIS:  -- about

15          communications --

16               MR. GENTRY:  -- to continue --

17                  THE COURT REPORTER:  One at a

18          time.

19               MR. GENTRY:  -- with the deposition.

20                  THE COURT REPORTER:  We'll go

21          off the record.  I can't take two people

22          at once.

23               MR. GENTRY:  That's fine.  I plan to

24          keep asking questions.

```
 1                     And, counsel, I would ask you not to
 2                 interrupt, please.
 3   BY MR. GENTRY:
 4         Q.    Do you have an attorney fee agreement
 5   with your lawyer?
 6                     MR. HATZIDIMITRIADIS:  Objection.
 7                 Attorney-client privilege.
 8                     Mr. Gaston, you do not have to
 9                 answer that question.
10                     THE WITNESS:  Okay.
11   BY MR. GENTRY:
12         Q.    Mr. Gaston, have you paid your attorneys
13   anything?
14                     MR. HATZIDIMITRIADIS:  Objection.
15                 Attorney-client privilege.
16                     You do not have to answer that
17                 question.
18                     THE WITNESS:  What does this have to
19                 do with --
20                     MR. GENTRY:  I do not --
21                     THE WITNESS:  What does this have to
22                 do with what we came here for?  Nothing.
23   BY MR. GENTRY:
24         Q.    Mr. Gaston, have you agreed with your
```

1   attorneys to compensate them in any way?

2                        MR. HATZIDIMITRIADIS:  Objection.

3                   Attorney-client privilege.

4                        You do not have to answer that,

5                   Mr. Gaston.

6   BY MR. GENTRY:

7         Q.    Mr. Gaston, who is paying your attorneys

8   for their work in this case?

9                        MR. HATZIDIMITRIADIS:  I'm going

10                  to object on the grounds of relevance.

11                       If you know the answer, Mr. Gaston,

12                  you may answer it.

13  BY MR. GENTRY:

14        Q.    Can you please answer the question,

15  please?

16        A.    When the time comes, I am.

17        Q.    And how much are you going to pay your

18  attorneys for their services in this case?

19        A.    That's irrelevant.

20                       MR. HATZIDIMITRIADIS:  Objection.

21                  Objection.  Attorney-client privilege.

22                       You do not have to answer that

23                  question.

24  BY MR. GENTRY:

         Q.    How did you find Amy?
         A.    We went over that once before.
                   MR. HATZIDIMITRIADIS:  Objection.
               Attorney-client privilege.
                   You do not have to answer that
               question.
BY MR. GENTRY:
         Q.    Who was the friend that directed you to
Amy?
               Please answer the question.
         A.    What does that have to do with this?
Nothing.
         Q.    Mr. Gaston, I'll ask you again, and
please answer the question.
               Mr. Gaston, are you refusing to answer
that question?
         A.    Probably, because it has nothing to do
with this.
         Q.    Well, I need to know clearly.  Are you
refusing to answer the question?
         A.    Yes.
                   MR. GENTRY:  Your counsel has not
               directed you to not answer the question.
               This is a matter, like all the others,

```
 1                    that we'll have to bring up with the
 2                    judge, and we'll have to come back here
 3                    at great expense to do this again.  But
 4                    I'll move on.
 5                        MR. HATZIDIMITRIADIS:  Objection.
 6                    Boyd, you're harassing and intimidating
 7                    the witness right now.  That's not
 8                    appropriate.
 9                        Mr. Gaston, if you understand the
10                    question, you may otherwise just answer
11                    truthfully.
12                        THE WITNESS:  Adile Washington
13                    (phonetic).
14  BY MR. GENTRY:
15          Q.   How do you spell that name, please?
16          A.   I don't know how to spell her first name.
17  Washington is spelled just like it is.
18          Q.   And how do you know this person?
19          A.   We used to work together.
20          Q.   Is Washington a man or woman?
21                        MR. HATZIDIMITRIADIS:  Boyd, these
22                    questions are ridiculous.  I mean, at
23                    any --
24                        MR. GENTRY:  I'm trying my best --
```

1       I'm trying to identify who this

2       Washington --

3               THE COURT REPORTER:  One at a

4       time.

5           MR. HATZIDIMITRIADIS:  What does

6       that have to do -- if you you can explain

7       to me what that has to do with finding

8       admissible evidence in this case, I'll

9       entertain it; otherwise, it's completely

10      out of line, Boyd.

11          MR. GENTRY:  Once again, Ted, please

12      stop making speeches --

13          MR. HATZIDIMITRIADIS:  Teddy.

14          MR. GENTRY:  -- on the record.

15          MR. HATZIDIMITRIADIS:  Teddy,

16      Teddy.

17          MR. GENTRY:  I'll ask questions.

18      You may object, and then we'll proceed.

19      You're delaying the deposition.

20          MR. HATZIDIMITRIADIS:  I'm not

21      delaying the deposition.  You don't have

22      the right to ask anything you want.  The

23      testimony has to lead to admissible

24      evidence.  None of these questions are

1           pertinent to anything.

2    BY MR. GENTRY:

3           Q.    And so am I correct that your Washington

4    friend gave you the name of Amy, the one you believe

5    is a lawyer in Chicago?

6           A.    Yeah.

7                     MR. VOLHEIM:  Teddy.

8                     MR. HATZIDIMITRIADIS:  Can we go off

9                the record for a second?  I think my

10               colleague wants to speak to me.

11                    MR. GENTRY:  No.  I'd like to

12               continue.

13                    MR. VOLHEIM:  Teddy.  This is --

14                    MR. GENTRY:  If you contact this

15               Amy --

16                    MR. VOLHEIM:  -- Nate.  Teddy --

17                    MR. HATZIDIMITRIADIS:  Yes?

18                    MR. VOLHEIM:  -- can you --

19                    THE COURT REPORTER:  We've got

20               three people talking at the same time and

21               the sound is breaking up.  We're off the

22               record.

23                    (Pause.)

24                    (Mr. Hatzidimitriadis is not

```
 1                   present via web conference.)
 2                   MR. VOLHEIM:  This is
 3               Nathan Volheim.  I'm an attorney for the
 4               plaintiff.  I have an appearance on the
 5               case.  I will be taking over the
 6               deposition from Teddy who has to go
 7               somewhere.
 8                   MR. GENTRY:  Okay.  Great.  Welcome,
 9               Nathan.  All right.
10   BY MR. GENTRY:
11        Q.    Mr. Gaston, when you lived at the Dorr
12   Street apartment, who lived there with you?
13        A.    My daughter.
14        Q.    Is your daughter a minor today?
15        A.    Yes.
16        Q.    How many children do you have?
17        A.    Okay.  What does that have to do -- you
18   know what?  I'm kind of fed up with this deposition.
19               What does that have to do with this?
20        Q.    How many children do you have?
21        A.    What does that have to do with this?
22                   MR. VOLHEIM:  Mr. Gaston, this is
23               Nate.  I understand that it has nothing
24               to do with it.  Counsel is fishing.
```

1          You can go ahead and answer the

2     question, okay.

3          THE WITNESS:  This is wasting my

4     doggone day.  I got stuff to do.

5          MR. VOLHEIM:  Let's go off the

6     record, please.

7          MR. GENTRY:  I would prefer -- I

8     want to stay on the record, please.  On

9     the record.  I want to get through this.

10    It's not that hard.

11         MR. VOLHEIM:  Okay.  This can go on

12    the record then.  Let the record reflect

13    that I tried to go off out of respect for

14    Boyd, but he wants it on the record.

15         Mr. Gaston --

16         MR. GENTRY:  Yes.  I'd like to

17    continue.

18         MR. VOLHEIM:   -- counsel doesn't

19    want --

20         MR. GENTRY:  I'd like to continue

21    with --

22         THE COURT REPORTER:  One person at a

23    time.

24         MR. VOLHEIM:  -- he doesn't want you

```
 1              to speak to the merits of the case, he
 2              just wants to ask things so that you get
 3              upset and don't answer his questions.
 4                   What I would ask, I know it's
 5              upsetting, but go ahead and answer his
 6              questions, and I will object when I need
 7              to.  Okay?
 8                   If you don't answer him, you're just
 9              playing into exactly what he's trying to
10              have you do.
11                   THE WITNESS:  Okay.
12  BY MR. GENTRY:
13       Q.    How many children do you have,
14  Mr. Gaston?
15       A.    Two.
16       Q.    Are they both minors?
17       A.    No.
18       Q.    What is the first name of your adult
19  child, please?
20                   MR. VOLHEIM:  Objection.
21              Relevance.
22                   You can go ahead and answer.
23                   THE WITNESS:  Ariel Gaston.  Do you
24              want me to spell that, too?
```

1          MR. GENTRY:  Please.

2          THE WITNESS:  A-r-i-e-l,

3     G-a-s-t-o-n.

4  BY MR. GENTRY:

5          Q.    What's the highest level of education

6  you've completed?

7          A.    Associate degree.

8          Q.    Where did you go to school?

9          A.    Com Tech, University of Toledo.

10         Q.    And what did you study?  What was your

11  major?

12         A.    Law enforcement.

13         Q.    Are you employed?

14         A.    No.  I'm on disability.

15         Q.    When were you last employed?

16         A.    2007.  Excuse me, 2004.

17         Q.    Who did you work for in 2004?

18         A.    Lucas County Sheriff's Department.

19         Q.    What was your position there?

20         A.    Deputy sheriff.

21         Q.    How long were you a deputy sheriff for

22  Lucas County?

23         A.    10 years.

24         Q.    Where were you employed before Lucas

1  County Sheriff's Office?

2          A.      Security for Jeep.

3          Q.      How long did you work for the Jeep plant?

4          A.      Eight-and-a-half years.

5          Q.      And is that the Jeep plant in Lucas

6  County?

7          A.      Yep.

8          Q.      Have you ever sued anyone?

9          A.      Nope.

10         Q.      Have you ever been sued?

11         A.      Probably.

12         Q.      How many times have you been sued?

13         A.      I can't remember.

14         Q.      Have you been sued by the Toledo Clinic?

15         A.      Who?

16         Q.      The Toledo Clinic.

17         A.      Not to my knowledge.

18         Q.      Have you been sued by a health care

19  provider?

20         A.      Not to my knowledge.

21         Q.      Have you been sued by Mercury Finance?

22                 MR. VOLHEIM:  Show an objection.

23                 THE WITNESS:  Not to my knowledge.

24                 Who is Mercury Finance?

```
 1   BY MR. GENTRY:

 2           Q.      Have you ever filed bankruptcy?

 3           A.      Yep.

 4           Q.      How many times have you filed bankruptcy?

 5           A.      Once to my knowledge.

 6           Q.      When you worked with Ms. Washington, who

 7   was the employer, the Lucas County sheriff or was it

 8   the Jeep plant?

 9           A.      Sheriff's department.

10           Q.      I'm sorry.  You broke up.  Say that

11   again.

12           A.      Sheriff's department.

13           Q.      And what was Ms. Washington's position in

14   the sheriff's department?

15           A.      Correction officer.

16           Q.      Were you working in the jail for the

17   sheriff's department?

18           A.      Yes.

19           Q.      Have you ever sought treatment at the

20   Toledo Clinic?

21           A.      Yep.

22           Q.      Have you ever taken your minor daughter

23   for treatment at the Toledo Clinic?

24           A.      No.
```

```
 1          Q.    You have in front of you the documents
 2   that have the stamp on them Gaston 1 through Gaston 3.
 3               You said you gave them to Amy, right?
 4          A.    No, I didn't say that.  You asked me what
 5   happened to them.  I said I don't know.
 6          Q.    You don't know how your lawyers came in
 7   possession of those?
 8          A.    Yeah.  I sent them to them.
 9          Q.    And who did you send them to?  Amy, is
10   that right?
11          A.    Yes.
12          Q.    And would that have been an e-mail?
13          A.    No.  I don't know how to e-mail, so it
14   was either sent through mail or it was faxed to them.
15          Q.    Did you send it through the mail or fax
16   it or did Ms. Washington do it for you?
17                    MR. VOLHEIM:  Objection.  Asked
18               and answered.
19                    THE WITNESS:  No, I did it myself.
20   BY MR. GENTRY:
21          Q.    Did you already have an ongoing
22   relationship with the lawyers before you sent that?
23          A.    You're breaking up.
24                    MR. VOLHEIM:  Objection.
```

```
 1                         Mr. Gaston --
 2   BY MR. GENTRY:
 3          Q.     Did you already have the relationship --
 4                      MR. VOLHEIM:  Mr. Gaston --
 5                      MR. GENTRY:  -- with the lawyers
 6                 before you sent that?
 7                      THE WITNESS:  I hear you.
 8                      MR. VOLHEIM:  Objection.
 9                 Attorney-client privilege.
10                      You can answer that question,
11                 Mr. Gaston.
12                      THE WITNESS:  Okay.  No.
13   BY MR. GENTRY:
14          Q.     When did you first hire your attorneys?
15          A.     When they -- when I spoke to them about
16   this.
17          Q.     And you're indicating the two letters you
18   have in front of you.  You're talking about that?
19          A.     Right, right.
20          Q.     Okay.  And so that would have been after
21   the -- you have two letters in front of you.  One is
22   dated January 15th, 2018.  That is Gaston No. 2.  And
23   then you also have one marked Gaston 1, and it's dated
24   April 5th, 2018, right?
```

```
 1        A.    Right.

 2                    MR. NOWAK:  Just for the record,

 3              Boyd, if I may interrupt, the first

 4              letter, just so the record is clear, the

 5              letter dated January 15th, 2018, is

 6              marked as Defendant's A; and the second

 7              letter dated April 5th of 2018 is marked

 8              as Defendant's B.

 9                    MR. GENTRY:  I'm sorry.  Thank you.

10                    MR. VOLHEIM:  Whoever was just

11              speaking -- whoever was just speaking can

12              you identify themselves, please?

13                    MR. NOWAK:  Yes, James Nowak.

14              Co-counsel for defendant.

15                    MR. VOLHEIM:  Thank you, James.  I

16              appreciate it.

17                    MR. NOWAK:  No problem.  I just

18              wanted the record to be clear as to how

19              the exhibits were marked here.  Since I'm

20              the only one, with the exception of the

21              plaintiff and the court reporter, that

22              can actually see the marked exhibits at

23              this point.

24  BY MR. GENTRY:
```

1       Q.   So, Mr. Gaston, after you received

2  Exhibit A, which is the January 15 letter, is that

3  when you had this discussion with Ms. Washington and

4  decided to send the letter to an attorney?

5       A.   No.  I think it was sometime after that.

6       Q.   How long after the January letter date

7  did you -- how long did you wait until you spoke with

8  Amy about it?  I'm sorry, with Ms. Washington.

9       A.   I don't know.  It was after the -- it was

10  after the April letter.

11       Q.   What about the April letter made you

12  bring this up to Ms. Washington?

13       A.   I didn't bring it up.  We were just

14  having a conversation, and she brought it up to me.

15       Q.   You were having a conversation about

16  letters that you had received in the mail?

17       A.   Yeah.

18       Q.   And when you were having this

19  conversation, you were no longer employed with

20  Ms. Washington, right?

21       A.   Right.

22       Q.   And so were you having this conversation

23  at your house or her house?

24       A.   Her house.

```
 1          Q.    And why were you at her house having a
 2    conversation about mail you received?
 3          A.    Oh, for Christ's sake.  What difference
 4    does it make?
 5                     MR. VOLHEIM:  Objection.
 6                     Relevance.
 7                     Mr. Gaston, hold on, please.  Thank
 8                     you.  I agree with you.
 9                     Boyd, what is the relevance of that
10                     question?
11                     MR. GENTRY:  I don't have to explain
12                     the relevance.
13    BY MR. GENTRY:
14          Q.    Can you please answer the question?
15          A.    No, I refuse to.
16          Q.    Did Ms. Washington tell you that she had
17    filed a lawsuit from receiving a letter?
18                     MR. VOLHEIM:  Objection.
19                     Relevance.
20                     You can answer, Mr. Gaston.
21                     THE WITNESS:  May have.
22    BY MR. GENTRY:
23          Q.    And did she tell you that she had
24    received any money from that lawsuit?
```

```
 1                    MR. VOLHEIM:  Objection.

 2              Relevance.

 3                    You can answer, Mr. Gaston.

 4                    THE WITNESS:  Not at the time.

 5  BY MR. GENTRY:

 6         Q.    Has she since told you that she received

 7  any money?

 8         A.    I don't talk to her that often.

 9         Q.    Why did your mail come up with her?

10         A.    My mail didn't.  She said if I had any

11  letters, I could send them to her, to this attorney.

12  That's how they came up.

13         Q.    Okay.  She said, If you've gotten any

14  letters (inaudible), you could send them to her, and

15  she would get them to a lawyer; is that right?

16         A.    What?

17         Q.    I'm sorry.  You broke up.  Is that right?

18         A.    You broke up.  What did you say?

19         Q.    She told you, Ms. Washington told you

20  that if you had received any letter asking you to pay

21  money --

22                    (Audio connection dropped.)

23                    THE WITNESS:  Now it's down.

24                    THE COURT REPORTER:  We can't hear
```

1    you.

2              (A brief recess was had.)

3              (Nancy Quiroga and Randy Parker are

4         not present via videoconference.)

5    BY MR. GENTRY:

6         Q.   So is it correct, Mr. Gaston, that you

7    had this conversation with Ms. Washington, then you

8    brought her, in person, the two letters that are

9    marked as Exhibits A and B?

10        A.   Wrong.

11             MR. VOLHEIM:  Objection.  Hold on.

12             Mr. Gaston, go ahead, Mr. Gaston,

13        you can answer that.

14             THE WITNESS:  No.  She was just

15        informing me what she had done.  She had

16        sent them to this attorney that she had

17        found out about, and so she gave me this

18        attorney's, Amy's information, and I just

19        called Amy and told her I had some

20        letters.

21             So she told me to send them or fax

22        them to her and she would look them over,

23        and that's what it was.

24   BY MR. GENTRY:

```
 1        Q.    Why did you want to go to a lawyer?

 2        A.    Ms. Washington said because there was a

 3   possibility that if it was wrongdoing in the letters,

 4   that you could get money for them.

 5        Q.    When you had read the letters and spoke

 6   with Ms. Washington, was there something wrong with

 7   the letter that you noticed?

 8        A.    I have no idea.  I'm not an attorney, so

 9   I can't look at something and tell if something's

10   wrong with it.

11        Q.    So did you read the letters when you got

12   them in the mail?

13        A.    Yeah.

14        Q.    And when you read them, you didn't notice

15   anything that was wrong, but Ms. Washington brought up

16   that maybe a lawyer should look at it, right?

17        A.    Something other than --

18              MR. VOLHEIM:  Objection -- hold

19              on, Mr. Gaston.

20              Objection.  Misstates the testimony.

21              You can go ahead and answer,

22              Mr. Gaston.

23              MR. GENTRY:  He's in the middle of

24              an answer.  Please don't interrupt him.
```

1          MR. VOLHEIM:  I can get an objection

2     on the record.  I'm sorry that this is

3     telephonic, we had to wait for you.  You

4     certainly can wait for me to get my

5     objection on, then Mr. Gaston can answer.

6          If you didn't want the delay, we

7     would have all been sitting in a room

8     there.  All right.

9          So I will make an objection.  And if

10    it's, unfortunately, it's during when my

11    client's speaking, I apologize, but

12    that's the nature of the beast that you

13    chose.

14         So going back to it.  Objection.

15    Misleading and misstates his testimony.

16         You can go ahead and answer,

17    Mr. Gaston.

18         THE WITNESS:  Other than where it

19    says Gaston 03, where they got these

20    principals and interests and others where

21    they got the zeroes or now, I mean, it

22    bothered me whether or not now they got

23    zeroes on here, whether or not later they

24    was going to turn into dollar amounts.

1  BY MR. GENTRY:

2      Q.    And so were the zeroes incorrect?

3      A.    Pardon me?

4      Q.    Were the zeroes that you're talking about

5  correct or incorrect?

6      A.    I have no idea.  I have no idea.  They

7  just says Principal, Interest, Other, zero, zero,

8  zero.  It says zeroes now, but I'm just saying later

9  on down the road before this was paid off, whether

10 they was going to change into something else.

11          If it wasn't going to be nothing, why was

12 it even on there in the first place?

13     Q.    What does zero mean?

14     A.    It means nothing now.

15     Q.    So this Exhibit A, which is marked Gaston

16 2 and 3, you -- you gave the originals to Amy, and you

17 don't have them back; is that right?

18     A.    No.

19     Q.    You don't know where the originals are

20 after you gave them to Amy; is that right?

21     A.    I would imagine they're still there.  I

22 don't have them.

23     Q.    Still where?

24     A.    With Amy and them.

1      Q.    Earlier you told me you may have faxed

2  the letters to Amy.  If you had faxed them, what would

3  you have done with the original?

4      A.    I would probably still have them.  What

5  difference does it matter where the originals are?

6            Does it matter where the originals are?

7      Q.    Is it fair to say that you don't know

8  where the originals are?

9      A.    Does it matter?

10      Q.    Mr. Gaston, please answer the question.

11            Is it fair that you do not know where the

12  originals of Exhibits A and B are?

13      A.    Probably not.

14      Q.    Okay.  So you do know where the originals

15  are, right?

16      A.    You just answered the question.  You told

17  me I didn't know, so probably not.

18      Q.    So are you agreeing with me that you do

19  not know where the originals are?

20      A.    Yeah, that's what you told me, so

21  probably not.

22      Q.    If you look at the first page of Exhibit

23  A, it says the total amount due is $775.30.

24            Do you see that?

```
 1              A.     Okay.  Small writing, I can't see.

 2              Q.     Was that correct or incorrect?

 3              A.     I don't know.  I have no idea what it's

 4    for.

 5              Q.     Okay.  If you turn to the second page of

 6    Exhibit A, which is marked Gaston 3, do you see that

 7    on there there are six columns?

 8              A.     Uh-huh.

 9              Q.     Client Name, Client Reference Number,

10    Principal, Interest and Total.

11              A.     Uh-huh.

12              Q.     Do you see the bottom right total is

13    775.30?

14              A.     Okay.

15              Q.     And do you see that in that table there

16    is a breakdown of the amounts that tally up to

17    $775.30?

18                     Do you see that?

19              A.     Okay.

20              Q.     Are those amounts correct?

21              A.     Once again, I'm going to say I don't

22    know, because I have no idea what they're for.  You're

23    just showing me --

24              Q.     Who is that letter from, Exhibit A?
```

```
 1          A.      Who is it from?

 2          Q.      Yes.  Who does the letter indicate that

 3   it's from.

 4          A.      Finance Systems.

 5          Q.      Have you spoken with anyone at Finance

 6   System of Toledo?

 7          A.      I can't recall.

 8          Q.      Have you ever sent money to anyone at

 9   Finance System of Toledo?

10          A.      I may have.

11          Q.      This January 15th, 2018, letter, is this

12   the first letter that you received from Finance

13   System?

14          A.      I don't -- I can't recall.  I don't know.

15          Q.      If Finance System has records that says

16   that they have sent you a number of letters before

17   this, would you disagree with that?

18          A.      Once again, I can't recall.

19          Q.      And if Finance System had records

20   indicating that you had made payments on certain

21   accounts, would you have any reason to disagree with

22   that?

23          A.      If they said, no, I don't.  I'm sure I

24   have made payments to different places.
```

1          Q.     Did you keep record of any of your

2     payments or correspondence to Finance System of

3     Toledo?

4          A.     I can't recall.

5          Q.     Did you understand when you received this

6     January 15th, 2018, letter that this was a letter from

7     a debt collector?

8          A.     Yeah.  I know Finance System is.

9          Q.     You had had dealings with them before

10    January of 2018, so you knew who they were, right?

11         A.     Yeah.

12         Q.     And you know what the Toledo Clinic is,

13    right?

14         A.     Yeah.  I go to the Toledo Clinic.

15         Q.     So for this January letter marked Exhibit

16    A, if it says there the amount due on two Toledo

17    Clinic accounts, are you telling me that you have no

18    record for you to check to see if those amounts are

19    owed by you?

20         A.     I'm sure they probably are, but I don't

21    know what they're for.

22         Q.     Did you contact Finance System of Toledo

23    after you received this January 2018 letter to ask

24    what it was for?

1      A.    Listen, that was -- that was a year ago.

2  That was over a year ago, and I can't remember.

3      Q.    Did you make any audio recordings of any

4  telephone call with Finance System?

5      A.    I don't make audio recordings.

6      Q.    Did you send any correspondence to

7  Finance System to ask about these bills or this

8  letter?

9      A.    No.  No.

10      Q.    Are you aware of -- let me back up.

11           There are a number of cases on the Toledo

12  Municipal Court docket indicating that you have been

13  sued by various creditors.

14           Are you aware of that?

15      A.    Huh-uh.

16      Q.    And some of them were stayed, and your

17  liability was ultimately discharged because you filed

18  bankruptcy.

19           Are you aware of that?

20      A.    No.

21      Q.    If you get a judgment against someone in

22  municipal court and they don't pay that, what happens

23  to that judgment?

24           MR. VOLHEIM:  Objection.

```
 1                    Hold on, Mr. Gaston.  Don't answer
 2               that.
 3                    THE WITNESS:  Okay.
 4                    MR. VOLHEIM:  Objection.  Calls for
 5               a legal conclusion, incomplete
 6               hypothetical.
 7                    Go ahead and answer to the extent
 8               you can, Mr. Gaston.
 9                    THE WITNESS:  Okay.
10                    Can you repeat, the what now?
11    BY MR. GENTRY:
12         Q.    If you get a judgment against someone in
13    Toledo Municipal Court and they don't pay it, does
14    that judgment remain the same amount or does it ever
15    add interest?
16                    MR. VOLHEIM:  Same objection.
17                    Go ahead.  Mr. Gaston.
18                    THE WITNESS:  Okay.  I guess it -- I
19               don't know.  I guess it adds interest, I
20               guess.  Some of them, I guess.
21    BY MR. GENTRY:
22         Q.    Okay.  The Exhibit B that you brought
23    with you marked Gaston 1, it lists a total amount due
24    of $208.59.
```

```
 1                    Do you see that?
 2          A.    Yeah.
 3          Q.    Do you know what that account involved?
 4          A.    Do I what?
 5          Q.    Do you know what that account involved?
 6          A.    No.
 7          Q.    Do you know why they sent you a 200
 8   dollar bill, Toledo Clinic?
 9          A.    No.  Do you?
10          Q.    Did you ask anyone at Finance System to
11   explain that?
12          A.    Once again, I don't remember.
13          Q.    So you've gone to Toledo Clinic to obtain
14   services, right?
15          A.    Pardon me?
16          Q.    So you have gone to Toledo Clinic to
17   obtain services; is that right?
18          A.    Yeah.
19          Q.    And did you sign anything with the Toledo
20   Clinic agreeing to make payments for the services?
21          A.    What now?
22          Q.    Did you sign an agreement with Toledo
23   Clinic --
24          A.    It's not with the Toledo Clinic -- it's
```

1 not with the Toledo Clinic.  My doctors are with the
2 Toledo Clinic.
3          Q.    Okay.  What's your doctor's name?
4          A.    What am I supposed to do, run down all my
5 doctors?
6          Q.    Well, how many doctors do you have there
7 with the Toledo Clinic?
8          A.    All of them.  And I've had multiple
9 doctors with the Toledo Clinic, so ...
10          Q.    Okay.  So for any of these doctors that
11 you've seen at the Toledo Clinic, have you signed a
12 document agreeing to make payments for the services?
13          A.    I don't know.
14          Q.    Is that "I don't know," or is that just
15 "no"?
16          A.    I don't -- I don't know.
17          Q.    Did you receive bills from the Toledo
18 Clinic that -- for these accounts that are mentioned
19 in these two letters that are Exhibits A and B?
20          A.    I really couldn't tell you.
21          Q.    Do you know who owns the right to collect
22 these accounts?
23          A.    The what?
24          Q.    Who is the creditor for these accounts?

1    Is it the Toledo Clinic, or do you know?

2         A.    I have no idea.

3         Q.    Do you think that Finance System bought

4    the debts?

5         A.    I couldn't tell you.

6         Q.    So when you read the Exhibit A, was it

7    two pages in that original, or was it three pages or

8    just one page?  How many pages -- how many pieces of

9    paper were in the original?

10        A.    I don't remember.

11             MR. GENTRY:  Nathan, is there some

12             reason why we don't have the original

13             here with us today?

14             MR. VOLHEIM:  I will ask the same

15             question again.  You guys produced them,

16             didn't you?

17             MR. GENTRY:  The deposition notice

18             required Mr. Gaston to bring the original

19             letter with him today.

20             MR. VOLHEIM:  Uh-huh.

21             MR. GENTRY:  Is there some reason we

22             don't have the original?

23             MR. VOLHEIM:  I'm not being deposed

24             here today, Boyd, so if you have issues,

```
 1                    you can certainly speak to me about it
 2                    anytime, but not during the deposition of
 3                    my client.
 4                         And number two, my client has
 5                    testified quite adamantly that he doesn't
 6                    know if he has originals or not.  So
 7                    there's the answer to your question.
 8   BY MR. GENTRY:
 9        Q.    Mr. Gaston, I already asked you if you
10   ever sued anyone, and you responded by saying no.
11                    Do you remember that testimony?
12        A.    Uh-huh.
13        Q.    Is that yes?
14        A.    Yes.  I don't remember ever suing
15   anybody.
16        Q.    So when you went to Amy, whatever
17   happened to that?
18                    MR. VOLHEIM:  Objection.
19                    Attorney-client privilege.
20                         Boyd, if you want to clean up your
21                    question, I will consider having my
22                    client answer.  But right now I'm going
23                    to instruct him not to because I have no
24                    idea what you're asking.
```

1  BY MR. GENTRY:

2      Q.    Well, you went to Amy about the issue

3  that you discussed with Ms. Washington, this letter.

4            What did you ever do with that?

5                  MR. VOLHEIM:  Objection.

6            Attorney-client privilege.

7                  You can answer the question,

8            Mr. Gaston, to the extent you know.

9                  THE WITNESS:  Okay.

10  BY MR. GENTRY:

11     Q.    What's your answer, please?

12     A.    Well, what did I do about this?  Well,

13  we're here now, I guess, whatever you want to call

14  this.

15     Q.    Well, I'm here taking your deposition,

16  talking to you.

17     A.    Yeah.  I don't think you're really

18  talking.  You're pressuring me.

19     Q.    What did you do about these letters?

20                  MR. VOLHEIM:  Objection.  Asked

21            and answered.

22                  You can answer again, Mr. Gaston.

23                  THE WITNESS:  Okay.  What do you

24            mean, what did I do about these letters?

```
 1   BY MR. GENTRY:
 2        Q.   Well, you obviously decided not to sue
 3   anyone, right?
 4                   MR. VOLHEIM:  Objection.
 5                   Misstates the testimony.
 6   BY MR. GENTRY:
 7        Q.   Can you please answer it?
 8        A.   What are you looking for me to answer?
 9        Q.   I'm asking you is it right that you made
10   the decision not to sue anyone?
11        A.   I'm lost with the question.
12        Q.   Earlier you told me you never sued
13   anyone.
14        A.   Right.
15        Q.   Even though you went to consult with a
16   lawyer, did you make the decision yourself to not file
17   suit against anyone?
18                   MR. VOLHEIM:  Objection.  Vague.
19                   Boyd, are you talking about in
20                   reference to the current lawsuit, or are
21                   you talking about in general?
22                   MR. GENTRY:  I'm just trying to get
23                   an answer.
24                   THE WITNESS:  Answer to what?
```

```
 1  BY MR. GENTRY:

 2       Q.    Did you make a decision to not sue

 3  anyone?

 4                 MR. VOLHEIM:  Objection.

 5                 You can answer.

 6  BY MR. GENTRY:

 7       Q.    You can answer.

 8       A.    I said that I've never sued no one

 9  before.  I think that answer is good enough.

10       Q.    Okay.  Have you taken any medications in

11  the last 24 hours that might affect your memory?

12       A.    Well, let me -- hold on.  Let me think.

13  No.

14       Q.    Were you able to drive to the deposition

15  on your own?

16       A.    Yeah.

17       Q.    Is your -- what was your disability for?

18       A.    My right hand.

19       Q.    And does that prevent you from working?

20       A.    It prevented me -- it prevented me from

21  working in my field.

22       Q.    And is it right that since 2004 you've

23  not held any employment?

24       A.    At that time, since then, I've done my
```

1   own landscaping.

2        Q.    Okay.  Under your own company name; is

3   that right?

4        A.    Well, no.  I just do it for friends.

5        Q.    So if you go back to Gaston 003, which is

6   the second page of this Exhibit A, I want you to look

7   at the column that says Principal.  What does

8   "principal" mean?

9        A.    The full amount.

10       Q.    What does the word "interest" mean to

11  you?

12       A.    What's added on to that.

13       Q.    And so when you read this column of

14  Principal in this letter today, you understand it to

15  be the initial amount that you owed to Toledo Clinic

16  on two accounts, right?

17       A.    Uh-huh.

18       Q.    Is that a yes?

19       A.    Yes.  My mouth is dry.

20            MR. NOWAK:  Would you like more

21            water, sir?

22            THE WITNESS:  Thank you.  Okay.

23  BY MR. GENTRY:

24       Q.    Then you see the column that says

1  Interest, and you said that's the amount that's added

2  on to the principal, right?

3          A.    Uh-huh.  Yes.

4          Q.    So as you sit here today and read this,

5  Principal and Interest, these two columns, do those

6  mean that no amounts were added for interest?

7          A.    Yeah.  Not at that time.

8                    MR. VOLHEIM:  Objection.

9                    Mr. Gaston, you can answer.  And I

10                  apologize about cutting you off.

11                  Objection, calls for speculation.

12                  Mr. Gaston, you can answer, even

13                  though you already have.

14                  THE WITNESS:  Okay.  No -- excuse

15                  me.

16                  Not at that time, but will there be,

17                  just like the column Other, what is

18                  "other"?  Why is Other on there?

19  BY MR. GENTRY:

20          Q.    All right.  So when you see that word

21  "Other," what does that mean to you?

22          A.    They could add some other fees on there.

23          Q.    And when you look at this actual text, it

24  has zeroes in for Other and zeroes for all the

1  Interest fields, right?

2          A.    Right.  At the time that they gave it --

3  at the time they sent it to me.

4          Q.    And so Finance System of Toledo told you

5  in writing that it had not added interest or other

6  charges to these principal amounts, right?

7          A.    At that time.

8          Q.    Has Finance System of Toledo ever told

9  you, either before or after this Exhibit A, that they

10 were adding interest or other amounts?

11         A.    I can't tell you, because I don't recall

12 talking to them.

13         Q.    Right.  So you would agree, they never

14 told you that they were adding interest or other

15 charges, right?

16         A.    I didn't talk to them, so they couldn't

17 tell me if I never talked to them.

18         Q.    Right.  So you would agree with me,

19 right, that Finance System of Toledo never told you

20 that it was seeking interest or other charges on these

21 accounts, right?

22         A.    I disagree with you, because they -- if I

23 didn't talk to them, they couldn't tell me that they

24 was or wasn't.

1          Q.    This document itself shows that

2   Finance System of Toledo is not seeking any interest

3   or any other charge.

4          A.    Then why -- then why even put it on

5   there?  Why just leave it other -- other places have

6   not even put nothing on there.  Why not just send --

7   why not just send the letter and just say -- why not

8   just send the first page?

9          Q.    Well, let's look at Exhibit B, the April

10  5th, 2018, letter.  Do you see that?  What you brought

11  with you today is just one page, right?

12         A.    Exactly.  So why not just -- why not just

13  send that?

14         Q.    Now, if you look at the total amount due,

15  $208.59, right?

16         A.    Yeah.

17         Q.    How much of that was principal and how

18  much was interest or other charges?

19         A.    Don't know.

20         Q.    Because that one page does not give you

21  any type of detail of how that $208.59 was tallied,

22  correct?

23         A.    I imagine.

24         Q.    Okay.  And so the Exhibit B, what you're

1   showing me, has a column for Principal, a column for

2   Interest, a column for Other showing you that there

3   was no interest and no other charge added to the

4   principal balances, right?

5           A.    At that time, yeah.

6           Q.    And there's no other communication from

7   Finance System of Toledo that changed the Interest or

8   Other column, right?

9           A.    I would imagine.

10          Q.    Right.  But you would agree with me,

11  right, they never told you that you owed interest or

12  other charges on these accounts, right?

13          A.    Once again, I have not talked to them.

14          Q.    And so this Exhibit B gets you a

15  breakdown of how the total amount, $775.30, came to

16  be, right?

17          A.    I would imagine.

18          Q.    And it did it in a fashion that was easy

19  for you to understand just sitting here reading

20  through it, because it's only taken a couple minutes

21  to look at it, and you know exactly where it comes

22  from, you know that it all comes from principal and

23  not interest or other charges, right?

24          A.    Maybe they sent.

```
 1                      MR. VOLHEIM:  Hold on.  Mr. Gaston,
 2               hold on.
 3                      Is there a question in there or are
 4               you just making a statement?
 5                      MR. GENTRY:  Well, I've asked him a
 6               question, and he's --
 7                      MR. VOLHEIM:  I don't hear a
 8               question in there.
 9                      MR. NOWAK:  This is James Nowak.  I
10               just want to clarify, because I think
11               you're saying Exhibit B, and I think what
12               you're referring to is Exhibit A, the
13               second page of Exhibit A.
14                      MR. GENTRY:  Yes, I'm sorry.  I was
15               talking about Exhibit A.
16                      So I'll restate the question for
17               you, Nathan, make it clear, since I made
18               a mistake there.
19   BY MR. GENTRY:
20        Q.    The second page of this Exhibit A gave
21   you a detailed breakdown of how the total amount was
22   calculated, right?
23        A.    Yeah.
24        Q.    And it demonstrated to you in Exhibit A
```

1    that Finance System was not seeking interest or other

2    charges on these accounts, right?

3          A.    At that time, yes.

4          Q.    And you're aware that if Toledo Clinic

5    were to file suit against you for these balances and

6    it gets a judgment, it could seek judgment rate

7    interest on those accounts, right?

8                  MR. VOLHEIM:   Objection.   Hold on,

9             Mr. Gaston.

10                Objection.   Asked and answered calls

11            for a legal conclusion.

12               You can answer again, Mr. Gaston, to

13            the extent that you know.

14               THE WITNESS:   Okay.   I would imagine

15            so.

16   BY MR. GENTRY:

17          Q.    And so if a judgment were to be rendered

18    against you, the Toledo Clinic files suit and gets a

19    judgment on those accounts, at that point, if the

20    judgment had interest, there might be a dollar amount

21    to put in the Interest column, right?

22          A.    Probably.

23                 MR. GENTRY:   Objection.   Calls for

24            a legal conclusion.   Incomplete

```
 1                    hypothetical.
 2    BY MR. GENTRY:
 3          Q.    And in that judgment, the court might
 4    also award court costs, which could go into the Other
 5    column, right?
 6                        MR. VOLHEIM:  Same objection.
 7                        Go ahead, Mr. Gaston.
 8                        THE WITNESS:  Probably.
 9    BY MR. GENTRY:
10          Q.    Okay.  And if you go to Exhibit B, again,
11    the April 5th, 2018, letter, the format of that letter
12    gives you less information, right?
13          A.    Uh-huh.
14          Q.    Is that a yes?
15          A.    Yes.  And maybe it was less information
16    because it was only one account; and this Exhibit A,
17    second page, it was multiple accounts, if we want to
18    get technical about it.
19          Q.    And if you are getting a letter from a
20    debt collector, would you like that debt collector to
21    give you less information or more complete
22    information?
23          A.    Probably more information.
24          Q.    Mr. Gaston, have you ever been charged
```

1   with a felony?

2          A.    No.

3          Q.    Have you ever been convicted of a crime

4   of dishonesty, like writing bad checks?

5          A.    No.

6          Q.    Are you claiming that you have lost or

7   spent money as a result of receiving these two letters

8   marked as Exhibits A and B?

9          A.    Do what?

10         Q.    Are you claiming today that you have lost

11  money because you received these letters marked

12  Exhibits A and B?

13         A.    No.

14         Q.    Are you aware that the lawyers in Chicago

15  filed a federal lawsuit on your behalf?

16         A.    Not sure.

17         Q.    And so you won't know where that lawsuit,

18  what state or city it's pending in, would you?

19                    MR. VOLHEIM:  Objection.

20               Relevance.

21                    Go ahead and answer, Mr. Gaston.

22                    THE WITNESS:  I'm going to say not

23               sure.

24  BY MR. GENTRY:

```
 1          Q.     Are you married?

 2          A.     Nope, no.

 3          Q.     Were you married in January or April of

 4    2018?

 5          A.     Wait a minute.  Let me think.

 6                 No.

 7          Q.     When you've been to the Toledo Clinic, do

 8    you recall if you ever signed a document that -- in

 9    which document you would have agreed to pay interest

10    or other charges beyond the principal balance for the

11    services rendered?

12          A.     No, no.

13          Q.     So if you were to get in front of a jury

14    on this federal lawsuit that your lawyer's filed on

15    your behalf, are you going to tell them that you

16    suffered damages?

17                      MR. VOLHEIM:  Objection.  Calls

18                 for a legal conclusion.

19                      You may answer, Mr. Gaston.

20                      THE WITNESS:  Okay.  No.

21    BY MR. GENTRY:

22          Q.     So you're not going -- and by "damages,"

23    I also mean harm.  You're not going to tell the jury

24    that you were harmed by these two letters, right?
```

```
 1        A.    No.
 2        Q.    All right.  And I don't mean to pester
 3   you, but I want to make sure I'm clear, because I
 4   think you're agreeing with me, but you're answering in
 5   the negative.  So I'm just going to ask it in a
 6   different way, because I think I worded it poorly.
 7             Have you been harmed by receiving these
 8   two letters in the mail?
 9        A.    No, once again.
10                  MR. GENTRY:  Okay.  We can go off
11                  the record.  I want to take just maybe a
12                  five-minute break if that's okay.
13                  (A brief recess was had.)
14                  (Court Reporter marked Defendant's
15                  Exhibit C.)
16   BY MR. GENTRY:
17        Q.    We took a brief recess and we're back on
18   the record.  The witness has been handed what's been
19   marked as Exhibit C as in Charlie.
20             Mr. Gaston, is Exhibit C a judgment
21   against you?
22        A.    Yeah.  It looks like it.
23        Q.    Have you satisfied that judgment?
24        A.    Okay.  First of all, what does that have
```

1   to do with this?

2       Q.   Have you made any payment toward that

3   judgment?

4       A.   Once again, what does that have to do

5   with this?

6       Q.   Mr. Gaston, I appreciate that you don't

7   understand what this has to do with it, but I don't

8   have to explain to you what this has to do with this

9   case. I'm going to ask you again, please answer the

10   question.

11               THE WITNESS: Okay. Do I have to

12               answer this question? My attorney.

13               MR. VOLHEIM: Mr. Gaston, it has no

14               relevance, but you can go ahead and

15               answer. That's fine.

16               THE WITNESS: Actually, I turned

17               this over to my attorney, so if you want

18               to know anything, you can call

19               Mr. Ed Snyder. He'll answer the

20               question.

21               So I'm done -- I'm done answering

22               the questions about this. So you can

23               contact Ed Snyder.

24   BY MR. GENTRY:

1       Q.   Mr. Gaston, you're here under oath in a

2  deposition.  I can only ask you the questions.

3       A.   Okay.  So I gave you my answer.  Contact

4  my attorney, Ed Snyder.

5       Q.   Are you refusing to answer if you've made

6  any payments for this judgment?

7       A.   Contact Mr. Ed Snyder.

8       Q.   So I'll take that as -- I'll assume that

9  you have not made any payments to satisfy this

10  judgment.

11       A.   Since this has no relevancy to why we're

12  here, you can contact Mr. Snyder.

13       Q.   Do you see the judgment awarded against

14  you is for 1,595 dollars?

15       A.   I'm not blind.

16       Q.   Plus statutory interest and court costs,

17  right?

18       A.   Okay.

19       Q.   That's what it says, right?

20       A.   I guess.  I ain't really looked at it

21  recently.

22       Q.   You said you're not blind.  Go ahead and

23  take a moment to read it.

24       A.   Okay.

```
 1          Q.    And so if you have not satisfied that
 2    judgment, the amount of interest that has accrued
 3    would make the amount owed larger than 1,595 dollars
 4    today, right?
 5          A.    Maybe, maybe not.
 6                     MR. VOLHEIM:  Objection.
 7                Objection.  Hypothetical.
 8                     You can answer, Mr. Gaston.
 9                     THE WITNESS:  Maybe, maybe not.
10                That's why I have an attorney.  That's
11                why I said contact him.
12    BY MR. GENTRY:
13          Q.    Do you know how much interest has accrued
14    on that judgment?
15          A.    I just said contact Mr. Snyder.  I turned
16    it over to him.  That's why you have an attorney, for
17    them to negotiate.
18          Q.    Mr. Gaston, I can hear you clearly.
19    There's no need for you to raise your voice.
20          A.    Well, apparently, you don't understand,
21    because you've been asking the same questions in
22    different ways for the majority of this deposition.
23          Q.    Again, Mr. Gaston, there's no need to
24    yell.
```

1          Do you know how much court costs were in
2  this case?

3          A.    Do what?

4          Q.    Do you know how much court courts were
5  awarded against you in that case?

6          A.    I can't tell you.  I know nothing about
7  it.  Ask Mr. Snyder.

8          Q.    The lawyers that filed that suit were
9  from the law firm of Scheer, Green & Burke, right?

10          A.    Yeah.  That's what the letter says.

11          Q.    Well, that's what the judgment says.
12  Those were the attorneys for the plaintiff, the City
13  of Toledo.

14          Have those lawyers sent you any
15  correspondence telling you that you owe interest or
16  court costs?

17                MR. VOLHEIM:  Objection.
18                Relevance.

19                Go ahead, Mr. Gaston.  We can play
20                Mr. Gentry's games.

21                THE WITNESS:  Okay.  Once again, I
22                turned it over to my attorney.  So it's
23                out of my hands.

24  BY MR. GENTRY:

```
 1        Q.    I'm not asking you if you turned anything
 2   over to your attorney or anything is in your hands.
 3             I'm asking you if you received a letter
 4   from Scheer, Green, & Burke indicating that you owed
 5   interest or court costs on this judgment.
 6        A.    If I turned it over to my attorney, I'm
 7   sure that he would have gotten in touch with them,
 8   stopping them from communicating with me.
 9        Q.    But you're still not directly answering
10   the question.
11        A.    Yes, I did.
12        Q.    Did they send you a letter?
13        A.    I answered the question.  I'm going to
14   answer it the same way once again.
15        Q.    Go ahead.
16        A.    I just did.
17        Q.    Did they send you such a letter?
18        A.    I don't recall.  There's my answer.
19        Q.    If you go back to Exhibit A, the second
20   page contains columns and rows for multiple accounts.
21        A.    Uh-huh.
22        Q.    Some of those accounts show a zero
23   principal balance, right?
24        A.    Uh-huh.
```

```
 1          Q.    Is that a yes?

 2          A.    Yes.

 3          Q.    And so when you see an account like the

 4  first one, EPNO INC TOLEDO, with a zero Principal and

 5  a zero Interest and a zero Other, what does that mean

 6  to you?

 7          A.    We've got a zero principal.  That means I

 8  don't owe anything, or that means it was paid.

 9          Q.    Does that mean that you might owe

10  something in the future to EPNO?

11          A.    Pardon me?

12          Q.    Does that mean in the future you might

13  owe something else to EPNO?

14          A.    No.  It was probably something there and

15  it was paid.

16          Q.    Right.  How about the next line down --

17          A.    Same thing.

18          Q.    -- the next one, Allstar Disposal, right?

19          A.    Uh-huh.

20          Q.    Did you pay that one?

21          A.    Same thing.

22          Q.    Did you deal with Allstar Disposal?

23          A.    Did I deal with them?

24          Q.    Yeah.  You were a customer, right?
```

```
 1          A.    Yeah.

 2          Q.    And what did they do for you?

 3          A.    I paid them.

 4          Q.    But what kind of service did they provide

 5   for you?

 6          A.    Garbage.

 7          Q.    What was this, like your residential

 8   garbage, or was it hauling like residential landscape

 9   projects away?

10          A.    Residential.

11          Q.    Okay.  And so you called Allstar Disposal

12   directly, and paid whatever bill that Finance System

13   knew about; is that right?

14          A.    No, I didn't pay that.  We came up on a

15   mutual agreement.

16          Q.    You and Allstar Disposal, right?

17          A.    Exactly.

18          Q.    Okay.  And so then when you got this

19   letter that's Exhibit A, and it shows Allstar Disposal

20   has zero Principal, zero Interest, these zero Other,

21   you knee that was because you had paid off that

22   Allstar Disposal account, ir you had satisfied it,

23   right?

24          A.    Right.
```

1      Q.    And then if we skip a couple lines down,

2 there's a Toledo Clinic reference No. 28093870001, and

3 it has a zero Principal, zero Interest, and zero

4 Other, is that because you had made payments and paid

5 that one off as well?

6      A.    I would imagine.  I can't recall talking

7 to them or nothing.  But I would imagine at some

8 point, probably.

9      Q.    Are you still treating with doctors at

10 the Toledo Clinic?

11      A.    All the time.

12      Q.    And do you ever -- have you ever gotten a

13 letter like this from Finance System and then you went

14 directly to Toledo Clinic to make a payment?

15      A.    No.

16      Q.    So you think maybe some of the payments

17 that you had paid off for Toledo Clinic accounts would

18 have been through Finance System?

19      A.    Because I have no idea what these -- I

20 have no idea what these bills are for or who they

21 are -- or what doctors they're for.

22      Q.    Do you see where each of the account

23 listings on that second page of that Exhibit A shows a

24 date of service and a client reference number?  Do you

1    see that?

2         A.    Right.

3         Q.    And so have you taken any steps to --

4         A.    But the date of service could be -- could

5    be multiple, multiple doctors, and all they did was

6    jammed all the -- just jammed it all up in one deal.

7         Q.    Have you taken any steps to learn what

8    happened on those dates?

9         A.    No.

10        Q.    Do you want to know if you owe this

11   money?

12        A.    I'm sure I do.

13        Q.    You're sure you do owe it, is that what

14   you're saying, or are you sure you want to know?

15        A.    I'm sure I will.  I've taken care -- I'm

16   sure I've taken care of some of the ones that's got

17   zeroes on them.

18                   MR. GENTRY:  All right.  I think

19                   that's all the questions I had, Nathan.

20                   You indicated you were going to ask some,

21                   so I'll yield the floor to you.

22                        - - -

23                   EXAMINATION

24   BY MR. VOLHEIM:

1          Q.    Mr. Gaston, as I said, I'll try to be

2    very brief.  Counsel gave a -- I'm going to first ask

3    you to look at Exhibit A, and then the second page of

4    Exhibit A.  There is a category on there which says

5    Other.

6                Do you see that category?

7          A.    Yes.

8          Q.    Where in this document, and you can look

9    either on page 2 or page 1.  Anywhere in this document

10   does this say what Other means or what Other

11   encompasses?

12         A.    No.

13         Q.    Does it say that Other means court costs?

14         A.    No, nothing.

15         Q.    Does it give you any indication -- does

16   it give you any indication of what Other refers to?

17         A.    No.

18         Q.    There are five different debts listed on

19   page 2.  Do you see that?

20         A.    Yes.

21         Q.    Do you have other debts -- in the last

22   five years, let's just go back five years, have you

23   had other debts or other obligations owed to Toledo

24   Clinic that is not listed here?

1       A.    Yes.

2       Q.    So it's fair to say that this is not a

3 complete list of accounts that you've had with Toledo

4 Clinic.

5       A.    No.

6       Q.    Okay.  I'm going to ask you to look at

7 what counsel marked as Exhibit C, which is the copy of

8 the judgment, and I'm going to direct your attention

9 to paragraph 2.

10         And paragraph -- and I know you can read

11 it, but I'm just going to read it for the record.

12         "It is therefore Ordered, Adjudged," I'm

13 a lawyer and I don't even know that word, "and Decreed

14 that the plaintiff have judgment against defendant in

15 the sum of $1595.00 plus statutory interest and court

16 costs."

17         Anywhere in that sentence does it say the

18 word "other"?

19       A.    No.

20       Q.    Is it clear to you from reading that

21 sentence what the amount of the judgment is?

22       A.    Not really, no.  It just says 1595 plus

23 interest and court costs.

24       Q.    Okay.  And it doesn't say any other

```
 1   categories of fees, correct?  Like it doesn't say
 2   "other" or anything like that.
 3          A.    No.  No.  No.
 4          Q.    Mr. Gentry today has shown you some
 5   documents.  Has he shown you any documents that you
 6   signed from Cleveland Clinic -- I'm sorry.  Strike
 7   that.
 8                Has Mr. Gentry shown you any documents
 9   today that you signed from the Toledo Clinic?
10          A.    No.
11          Q.    If you had signed a document with the
12   Toledo Clinic allowing interest or other charges to be
13   added to your debt, do you think Mr. Gentry would have
14   showed that to you?
15          A.    Yeah.
16          Q.    Earlier, Mr. Gentry asked you in
17   reference to the two collection letters that we've
18   looked at today if you would rather have more
19   information or less information.
20                Do you recall him asking you about that?
21          A.    Yes.
22          Q.    And I believe you said that you would
23   rather have more information, right?
24          A.    Yes.
```

```
 1          Q.    Would you rather have more information or
 2   accurate information?
 3          A.    Well, more information, but as long as it
 4   was accurate information.
 5          Q.    So is it fair to say that if you get a
 6   bunch of information but it's not clear or it's not
 7   true, that's not helpful to you?
 8          A.    Right.
 9                MR. GENTRY:  Objection.  Leading.
10                That was a leading question.
11                Objection.
12                MR. VOLHEIM:  We heard you the first
13                time.  Thank you.
14   BY MR. VOLHEIM:
15          Q.    The letter that's Exhibit A -- I just
16   have a few more questions, Mr. Gaston.
17                Exhibit A, is this letter, particularly
18   with reference to page 2, is it confusing to you?
19                MR. GENTRY:  Objection.
20                Leading.
21                THE WITNESS:  Well, yes.
22   BY MR. VOLHEIM:
23          Q.    You can answer, Mr. Gaston.
24          A.    Well, yes, because it's got Principal,
```

1  and then it's got Interest, and it's got Other.  Like

2  it is, are they going to add interest and other,

3  whatever other is, at a different point in time?

4                      MR. VOLHEIM:  That's all the

5                  questions that I have for you,

6                  Mr. Gaston.

7                      Mr. Gentry may have one or two

8                  follow-up questions.

9                      MR. GENTRY:  I do, thank you.

10                      - - -

11                      RE-EXAMINATION

12  BY MR. GENTRY:

13          Q.    If the judgment that is in Exhibit C had

14  stated that the judgment was for 1,595 plus zero

15  interest and zero court costs, would you understand

16  that no interest and court costs were owed?

17          A.    Yes.

18          Q.    And so that would make it more clear,

19  wouldn't it?

20          A.    Exactly.  Because I know then the exact

21  amount.

22          Q.    And as the judgment stands now, you're

23  not really sure, as it reads now, you can't tell how

24  much interest and what are the court costs, right?

1   A. Right.

2   Q. And so the information in the Exhibit A,

3 like the letter we have been talking about, it was

4 accurate on the day that it was sent to you and the

5 day you received it, right?

6   A. I would imagine.

7     MR. VOLHEIM:  Objection.  Calls

8     for his speculation.

9     You can answer, Mr. Gaston.

10     THE WITNESS:  Okay.  I would

11     imagine.

12 BY MR. GENTRY:

13   Q. And you have no reason to think that

14 there is interest or other charges that have been

15 added through today for the amounts in Exhibit A,

16 right?

17   A. I really can't say, because I really

18 haven't gotten anything else from them.

19   Q. And so if you had received another letter

20 from Finance System of Toledo with the same account,

21 and they -- you know, like a later letter, and they

22 showed that there was still no interest, still no

23 Other charge for these accounts, would that

24 demonstrate to you clearly that there was still no

```
 1   interest and still no Other charge to the account?
 2                   MR. VOLHEIM:  Objection.
 3             Hypothetical.
 4                   You can answer, Mr. Gaston.
 5                   THE WITNESS:  I guess.
 6                   MR. GENTRY:  That's all the
 7             questions I have.  Thank you.
 8                   MR. VOLHEIM:  Mr. Gaston, I'm done.
 9             I appreciate very much your time today.
10                   THE WITNESS:  Thank you.
11                   THE COURT REPORTER:  Do you need to
12             discuss signature?
13                   MR. VOLHEIM:  No.  We'll sign.
14                   (Deposition concluded and witness
15             excused at 12:17 p.m.)
16                   (Signature reserved.)
17                   - - -
18
19
20
21
22
23
24
```

SIGNATURE PAGE

Date of Deposition:  September 10, 2019

Correction page(s) enclosed? Yes____    No____

How many correction pages?_____

_____
                    ROBIE GASTON      Date

                          - - -

Please return this signed signature page along with
                correction page(s) to:

                COLLINS REPORTING SERVICE, INC.
                      615 Adams Street
                     Toledo, Ohio  43604
                      (419) 255-1010

Worksheet No. CS19-2424

C E R T I F I C A T E

        I, Casey G. Schreiner, a Notary Public in and
for the State of Ohio, duly commissioned and
qualified, do hereby certify that the within-named
witness was by me first duly sworn to tell the truth,
the whole truth, and nothing but the truth in the
cause aforesaid; that the testimony then given was by
me reduced to stenotype in the presence of said
witness and afterwards transcribed; that the foregoing
is a true and correct transcription of the testimony
so given as aforesaid.

        I do further certify that this deposition was
taken at the time and place in the foregoing caption
specified.

        I do further certify that I am not a
relative, employee of or attorney for any of the
parties in this action; that I am not a relative or
employee of an attorney of any of the parties in this
action; that I am not financially interested in this
action, nor am I or the court reporting firm with
which I am affiliated under a contract as defined in
the applicable civil rule.

1

2          IN WITNESS WHEREOF, I have hereunto set

3   my hand and affixed my seal of office at Toledo, Ohio

4   on this 23rd day of September, 2019.

5

6   _____

7          CASEY G. SCHREINER, RMR-RDR
              Notary Public
           in and for the State of Ohio

8

9

10  My Commission expires December 26, 2021.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**A**

**able** 48:14
**absolutely** 12:17
**account** 42:3,5 56:16 65:3 66:22 67:22 74:20 75:1
**accounts** 38:21 39:17 43:18,22,24 49:16 51:21 53:12 55:2,7,19 56:17 64:20,22 67:17 70:3 74:23
**accrued** 62:2,13
**accurate** 72:2,4 74:4
**action** 77:18,20,21
**actual** 50:23
**adamantly** 45:5
**Adams** 1:16 76:19
**add** 41:15 50:22 73:2
**added** 49:12 50:1,6 51:5 53:3 71:13 74:15
**adding** 51:10,14
**address** 6:4 9:6,8,9
**adds** 41:19
**Adile** 17:12
**Adjudged** 70:12
**admissible** 12:17 18:8,23
**adult** 22:18
**affect** 48:11
**affiliated** 77:22
**affixed** 78:3
**aforesaid** 77:8,12
**ago** 10:16 40:1,2
**agree** 30:8 51:13,18 53:10
**agreed** 14:24 58:9
**agreeing** 36:18 42:20 43:12 59:4
**agreement** 14:4 42:22 66:15
**ahead** 9:20 21:1 22:5,22 32:12 33:21 34:16 41:7,17 56:7 57:21 60:14 61:22 63:19 64:15
**ain't** 61:20
**allow** 9:17
**allowing** 71:12
**Allstar** 65:18,22 66:11,16,19,22
**amount** 36:23 39:16 41:14,23 49:9,15 50:1 52:14 53:15 54:21 55:20 62:2 62:3 70:21 73:21
**amounts** 34:24 37:16,20 39:18 50:6 51:6,10 74:15
**Amy** 10:19 11:8,22 12:1 16:1,9 19:4 19:15 26:3,9 29:8 32:19 35:16,20 35:24 36:2 45:16 46:2
**Amy's** 10:20 32:18
**answer** 9:17,20 10:8,11 11:13 12:5 14:9,16 15:4,11,12,14,22 16:5,10 16:14,15,20,23 17:10 21:1 22:3,5,8 22:22 27:10 30:14,20 31:3 32:13 33:21,24 34:5,16 36:10 41:1,7 45:7 45:22 46:7,11,22 47:7,8,23,24 48:5 48:7,9 50:9,12 55:12 57:21 58:19 60:9,12,15,19 61:3,5 62:8 64:14,18 72:23 74:9 75:4
**answered** 26:18 36:16 46:21 55:10 64:13
**answering** 59:4 60:21 64:9
**anybody** 45:15
**anymore** 12:18
**anytime** 45:2
**apartment** 6:2 20:12
**apologize** 34:11 50:10
**apparently** 62:20
**appear** 6:15,18
**appearance** 20:4
**APPEARANCES** 2:1

**appears** 7:11
**applicable** 77:23
**appreciate** 28:16 60:6 75:9
**appropriate** 17:8
**April** 27:24 28:7 29:10,11 52:9 56:11 58:3
**Ariel** 22:23
**asked** 13:7 26:4,17 45:9 46:20 54:5 55:10 71:16
**asking** 11:18 13:2,12,24 31:20 45:24 47:9 62:21 64:1,3 71:20
**Associate** 23:7
**assume** 61:8
**ATLAS** 2:3
**attention** 70:8
**attorney** 5:8 6:6 8:19,20,20,23 9:2,4 12:21 14:4 20:3 29:4 31:11 32:16 33:8 60:12,17 61:4 62:10,16 63:22 64:2,6 77:17,19
**attorneys** 14:12 15:1,7,18 27:14 63:12
**attorney's** 32:18
**attorney-client** 12:4,20 13:3 14:7,15 15:3,21 16:4 27:9 45:19 46:6
**audio** 31:22 40:3,5
**Avenue** 2:5
**award** 56:4
**awarded** 61:13 63:5
**aware** 40:10,14,19 55:4 57:14
**A-r-i-e-l** 23:2
**a.m** 1:14

**B**

**B** 3:7 7:7 8:9,10 28:8 32:9 36:12 41:22 43:19 52:9,24 53:14 54:11 56:10 57:8,12
**back** 17:2 34:14 35:17 40:10 49:5 59:17 64:19 69:22
**bad** 6:1 57:4
**balance** 58:10 64:23
**balances** 53:4 55:5
**bankruptcy** 25:2,4 40:18
**beast** 34:12
**Beavercreek** 2:15
**behalf** 2:2,8,12 57:15 58:15
**believe** 19:4 71:22
**best** 17:24
**beyond** 58:10
**bill** 42:8 66:12
**bills** 40:7 43:17 67:20
**blind** 61:15,22
**bothered** 34:22
**bottom** 8:3 37:12
**bought** 44:3
**Boyd** 2:13,14 5:7 6:24 11:1 12:7 17:6 17:21 18:10 21:14 28:3 30:9 44:24 45:20 47:19
**break** 59:12
**breakdown** 37:16 53:15 54:21
**breaking** 19:21 26:23
**brief** 7:9 32:2 59:13,17 69:2
**bring** 6:7 7:13 17:1 29:12,13 44:18
**broke** 25:10 31:17,18
**brought** 7:10,20 29:14 32:8 33:15 41:22 52:10
**bunch** 72:6
**Burke** 63:9 64:4

**C**

**C** 3:8 59:15,19,20 70:7 73:13 77:1,1

**calculated** 54:22
**call** 40:4 46:13 60:18
**called** 5:2 32:19 66:11
**calls** 41:4 50:11 55:10,23 58:17 74:7
**caption** 77:14
**care** 24:18 68:15,16
**case** 1:5 5:9 11:19 15:8,18 18:8 20:5 22:1 60:9 63:2,5
**cases** 40:11
**Casey** 1:17 77:3 78:6
**categories** 71:1
**category** 69:4,6
**cause** 77:8
**certain** 38:20
**certainly** 34:4 45:1
**certified** 5:4
**certify** 77:5,13,16
**change** 35:10
**changed** 53:7
**charge** 52:3 53:3 74:23 75:1
**charged** 56:24
**charges** 51:6,15,20 52:18 53:12,23 55:2 58:10 71:12 74:14
**Charlie** 59:19
**check** 39:18
**checks** 57:4
**Chicago** 10:23 12:2 19:5 57:14
**child** 22:19
**children** 20:16,20 22:13
**chose** 34:13
**Christ's** 30:3
**Circle** 5:19,24
**city** 10:22 57:18 63:12
**civil** 77:23
**claiming** 57:6,10
**clarify** 54:10
**clean** 45:20
**clear** 28:4,18 54:17 59:3 70:20 72:6 73:18
**clearly** 16:19 62:18 74:24
**Cleveland** 71:6
**client** 37:9,9 45:3,4,22 67:24
**client's** 34:11
**Clinic** 24:14,16,20,23 39:12,14,17 42:8,13,16,20,23,24 43:1,2,7,9,11 43:18 44:1 49:15 55:4,18 58:7 67:2 67:10,14,17 69:24 70:4 71:6,9,12
**colleague** 19:10
**collect** 43:21
**collection** 71:17
**collector** 39:7 56:20,20
**Collins** 1:15 76:18
**Colonel** 2:14
**column** 49:7,13,24 50:17 53:1,1,2,8 55:21 56:5
**columns** 37:7 50:5 64:20
**Com** 23:9
**come** 11:21 12:1 17:2 31:9
**comes** 15:16 53:21,22
**Commission** 78:9
**commissioned** 77:4
**communicating** 64:8
**communication** 53:6
**communications** 12:21 13:4,6,8,15
**company** 49:2
**compensate** 15:1
**complete** 56:21 70:3
**completed** 23:6
**completely** 18:9
**concluded** 75:14
**conclusion** 41:5 55:11,24 58:18

**conference** 2:4,4,14 20:1
**confusing** 72:18
**connection** 31:22
**consider** 45:21
**consult** 47:15
**CONSUMER** 2:3
**contact** 11:22 12:1 19:14 39:22 60:23 61:3,7,12 62:11,15
**contains** 64:20
**contents** 13:8
**continue** 13:16 19:12 21:17,20
**contract** 77:22
**conversation** 29:14,15,19,22 30:2 32:7
**convicted** 57:3
**copies** 6:15 7:1,11
**copy** 70:7
**correct** 6:16,19,22 19:3 32:6 35:5 37:2,20 52:22 71:1 77:11
**correction** 25:15 76:3,4,17
**correspondence** 39:2 40:6 63:15
**costs** 56:4 61:16 63:1,16 64:5 69:13 70:16,23 73:15,16,24
**counsel** 12:12 14:1 16:22 20:24 21:18 69:2 70:7
**County** 23:18,22 24:1,6 25:7
**couple** 6:8 9:18 53:20 67:1
**court** 1:1 3:8 7:6 13:9,17,20 18:3 19:19 21:22 28:21 31:24 40:12,22 41:13 56:3,4 59:14 61:16 63:1,4,16 64:5 69:13 70:15,23 73:15,16,24 75:11 77:21
**courts** 63:4
**Co-counsel** 28:14
**creditor** 43:24
**creditors** 40:13
**crime** 57:3
**CS19-2424** 76:23
**current** 47:20
**customer** 65:24
**cutting** 50:10

**D**

**D** 3:1
**damages** 58:16,22
**date** 1:14 7:22,24 29:6 67:24 68:4 76:2,6
**dated** 6:19,22 27:22,23 28:5,7
**dates** 68:8
**daughter** 20:13,14 25:22
**day** 21:4 74:4,5 78:4
**deal** 65:22,23 68:6
**dealings** 39:9
**debt** 39:7 56:20,20 71:13
**debts** 44:4 69:18,21,23
**December** 78:9
**decided** 29:4 47:2
**decision** 47:10,16 48:2
**Decreed** 70:13
**defendant** 1:8 2:8,12 5:2,8 28:14 70:14
**Defendant's** 7:7 28:6,8 59:14
**defined** 77:22
**degree** 23:7
**delay** 34:6
**delaying** 18:19,21
**demonstrate** 74:24
**demonstrated** 54:24
**department** 23:18 25:9,12,14,17
**deposed** 5:4 44:23

**deposition** 1:12 11:17 12:15 13:19 18:19,21 20:6,18 44:17 45:2 46:15 48:14 61:2 62:22 75:14 76:2 77:13
**deputy** 23:20,21
**Description** 3:6
**detail** 52:21
**detailed** 54:21
**difference** 30:3 36:5
**different** 38:24 59:6 62:22 69:18 73:3
**direct** 70:8
**directed** 16:8,23
**directly** 64:9 66:12 67:14
**disability** 23:14 48:17
**disagree** 38:17,21 51:22
**discharged** 40:17
**discovery** 11:4
**discuss** 75:12
**discussed** 46:3
**discussion** 7:5 29:3
**dishonesty** 57:4
**Disposal** 65:18,22 66:11,16,19,22
**DISTRICT** 1:1,1
**DIVISION** 1:2
**docket** 40:12
**doctors** 43:1,5,6,9,10 67:9,21 68:5
**doctor's** 43:3
**document** 6:21 43:12 52:1 58:8,9 69:8,9 71:11
**documents** 6:12,13,15 7:1,10,11,16 7:19 8:18 9:12,24 10:3 26:1 71:5,5 71:8
**doggone** 21:4
**dollar** 34:24 42:8 55:20
**dollars** 61:14 62:3
**Dorr** 6:1 20:11
**drive** 5:19,24 48:14
**dropped** 31:22
**dry** 49:19
**due** 36:23 39:16 41:23 52:14
**duly** 5:3 77:4,6
**DX** 3:6,7,8

**E**

**E** 3:1 77:1,1
**Earlier** 36:1 47:12 71:16
**easy** 53:18
**Ed** 60:19,23 61:4,7
**education** 23:5
**Eight-and-a-half** 24:4
**either** 26:14 51:9 69:9
**employed** 23:13,15,24 29:19
**employee** 77:17,19
**employer** 25:7
**employment** 48:23
**enclosed** 76:3
**encompasses** 69:11
**ends** 8:6,6,10,11
**enforcement** 23:12
**entertain** 18:9
**Entry** 3:9
**EPNO** 65:4,10,13
**evidence** 18:8,24
**exact** 73:20
**exactly** 22:9 52:12 53:21 66:17 73:20
**Examination** 3:2,3,4 5:3,5 68:23
**exception** 28:20
**excuse** 5:24 23:16 50:14
**excused** 75:15
**Exhibit** 3:6 8:9,10,11 29:2 35:15 36:22 37:6,24 39:15 41:22 44:6

49:6 51:9 52:9,24 53:14 54:11,12 54:13,15,20,24 56:10,16 59:15,19 59:20 64:19 66:19 67:23 69:3,4 70:7 72:15,17 73:13 74:2,15
**exhibits** 3:5 7:2,7 28:19,22 32:9 36:12 43:19 57:8,12
**expense** 17:3
**expires** 78:9
**explain** 18:6 30:11 42:11 60:8
**extent** 41:7 46:8 55:13
**e-mail** 9:4,6,8,9,11 26:12,13

**F**

**F** 77:1
**fair** 36:7,11 70:2 72:5
**fashion** 53:18
**fax** 26:15 32:21
**faxed** 26:14 36:1,2
**fed** 20:18
**federal** 57:15 58:14
**fee** 14:4
**fees** 50:22 71:1
**felony** 57:1
**field** 48:21
**fields** 51:1
**file** 47:16 55:5
**filed** 25:2,4 30:17 40:17 57:15 58:14 63:8
**files** 55:18
**Finance** 1:6 3:6,7 6:7 7:21 24:21,24 38:4,5,9,12,15,19 39:2,8,22 40:4,7 42:10 44:3 51:4,8,19 52:2 53:7 55:1 66:12 67:13,18 74:20
**financially** 77:20
**find** 11:8 16:1
**finding** 18:7
**fine** 13:23 60:15
**firm** 63:9 77:21
**first** 5:3 8:17 10:3 11:21 17:16 22:18 27:14 28:3 35:12 36:22 38:12 52:8 59:24 65:4 69:2 72:12 77:6
**fishing** 20:24
**five** 69:18,22,22
**five-minute** 59:12
**floor** 68:21
**Folks** 13:9
**follows** 5:4
**follow-up** 73:8
**foregoing** 77:10,14
**format** 56:11
**found** 32:17
**friend** 11:10,11 16:8 19:4
**friends** 49:4
**front** 26:1 27:18,21 58:13
**full** 5:10 49:9
**funny** 10:21
**further** 77:13,16
**future** 65:10,12
**F-11** 5:19

**G**

**G** 1:17 77:3 78:6
**games** 63:20
**garbage** 66:6,8
**Gaston** 1:3,12 3:3,7,8 5:1,11,16 7:10 8:4,14 10:11 11:12,21 12:6 14:8,12 14:24 15:5,7,11 16:13,15 17:9 20:11,22 21:15 22:14,23 26:2,2 27:1,4,11,22,23 29:1 30:7,20 31:3 32:6,12,13 33:19,22 34:5,17,19

35:15 36:10 37:6 41:1,8,17,23 44:18 45:9 46:8,22 49:5 50:9,12 54:1 55:9,12 56:7,24 57:21 58:19 59:20 60:6,13 61:1 62:8,18,23 63:19 69:1 72:16,23 73:6 74:9 75:4 75:8 76:6
**gastonrobie64@gmail.com** 9:10
**general** 47:21
**Gentry** 2:13,14 3:3,4,11,11 5:6,7 7:3 7:8 8:12 9:23 10:12 11:7,20 12:12 12:23 13:2,7,13,16,19,23 14:3,11 14:20,23 15:6,13,24 16:7,22 17:14 17:24 18:11,14,17 19:2,11,14 20:8 20:10 21:7,16,20 22:12 23:1,4 25:1 26:20 27:2,5,13 28:9,24 30:11,13 30:22 31:5 32:5,24 33:23 35:1 41:11,21 44:11,17,21 45:8 46:1,10 47:1,6,22 48:1,6 49:23 50:19 54:5 54:14,19 55:16,23 56:2,9 57:24 58:21 59:10,16 60:24 62:12 63:24 68:18 71:4,8,13,16 72:9,19 73:7,9 73:12 74:12 75:6
**Gentry's** 63:20
**getting** 56:19
**give** 5:10 52:20 56:21 69:15,16
**given** 77:8,12
**gives** 56:12
**Glenn** 2:14
**go** 9:20 13:20 19:8 20:6 21:1,5,11,13 22:5,22 23:8 32:12 33:1,21 34:16 39:14 41:7,17 49:5 56:4,7,10 57:21 59:10 60:14 61:22 63:19 64:15,19 69:22
**going** 5:22 11:2,16 15:9,17 34:14,24 35:10,11 37:21 45:22 57:22 58:15 58:22,23 59:5 60:9 64:13 68:20 69:2 70:6,8,11 73:2
**good** 5:7 48:9
**gotten** 31:13 64:7 67:12 74:18
**great** 7:4 17:3 20:8
**Green** 63:9 64:4
**grounds** 15:10
**guess** 41:18,19,20,20 46:13 61:20 75:5
**guys** 7:18 44:15
**G-a-s-t-o-n** 5:13 23:3

**H**

**hand** 48:18 78:3
**handed** 6:13 59:18
**hands** 63:23 64:2
**happened** 26:5 45:17 68:8
**happens** 40:22
**harassing** 17:6
**hard** 21:10
**harm** 58:23
**harmed** 58:24 59:7
**Hatzidimitriadis** 2:3 3:12,12,13,13 3:14,14,15,15,16,16 9:14,15 10:7 11:1,9,12,15 12:3,19,24 13:5,11,14 14:6,14 15:2,9,20 16:3 17:5,21 18:5,13,15,20 19:8,17,24
**hauling** 66:8
**health** 24:18
**hear** 27:7 31:24 54:7 62:18
**heard** 72:12
**held** 48:23
**Helmick** 1:7
**helpful** 9:19 72:7
**hereinafter** 5:4

**hereunto** 78:2
**He'll** 60:19
**highest** 23:5
**Highland** 2:5
**highly** 12:16
**Highway** 2:14
**hire** 27:14
**hold** 30:7 32:11 33:18 41:1 48:12 54:1,2 55:8
**honest** 11:5
**hours** 48:11
**house** 29:23,23,24 30:1
**Huh-uh** 40:15
**hypothetical** 41:6 56:1 62:7 75:3

**I**

**idea** 7:17 8:16 10:4,8 33:8 35:6,6 37:3 37:22 44:2 45:24 67:19,20
**identify** 8:8 18:1 28:12
**Illinois** 2:6 10:23
**imagine** 11:23 35:21 52:23 53:9,17 55:14 67:6,7 74:6,11
**inaudible** 31:14
**incomplete** 41:5 55:24
**incorrect** 35:2,5 37:2
**indicate** 38:2
**indicated** 68:20
**indicating** 27:17 38:20 40:12 64:4
**indication** 69:15,16
**information** 11:4 32:18 56:12,15,21 56:22,23 71:19,19,23 72:1,2,3,4,6 74:2
**informing** 32:15
**initial** 49:15
**instruct** 45:23
**interest** 35:7 37:10 41:15,19 49:10 50:1,5,6 51:1,5,10,14,20 52:2,18 53:2,3,7,11,23 55:1,7,20,21 58:9 61:16 62:2,13 63:15 64:5 65:5 66:20 67:3 70:15,23 71:12 73:1,2 73:15,16,24 74:14,22 75:1
**interested** 77:20
**interests** 34:20
**interrupt** 12:18 14:2 28:3 33:24
**intimidating** 17:6
**involved** 42:3,5
**ir** 66:22
**irrelevant** 12:11 15:19
**issue** 46:2
**issues** 44:24

**J**

**jail** 25:16
**James** 2:9,9 28:13,15 54:9
**jammed** 68:6,6
**January** 27:22 28:5 29:2,6 38:11 39:6,10,15,23 58:3
**Jeep** 24:2,3,5 25:8
**Jim** 6:9
**judge** 1:7 17:2
**judgment** 3:8 40:21,23 41:12,14 55:6 55:6,17,19,20 56:3 59:20,23 60:3 61:6,10,13 62:4 63:11 64:5 70:8 70:14,21 73:13,14,22
**jury** 58:13,23

**K**

**keep** 13:24 39:1
**kind** 20:18 66:4
**knee** 66:21

knew 39:10 66:13
know 10:21 15:11 16:19 17:16,18
20:18 22:4 26:5,6,13 29:9 35:19
36:7,11,14,17,19 37:3,22 38:14
39:8,12,21 41:19 42:3,5,7 43:13,14
43:16,21 44:1 45:6 46:8 52:19
53:21,22 55:13 57:17 60:18 62:13
63:1,4,6 68:10,14 70:10,13 73:20
74:21
knowledge 24:17,20,23 25:5

**L**

landscape 66:8
landscaping 49:1
larger 62:3
law 2:3,9,13 23:12 63:9
lawsuit 30:17,24 47:20 57:15,17
58:14
lawyer 10:5,13,15 11:22,23,24 14:5
19:5 31:15 33:1,16 47:16 70:13
lawyers 26:6,22 27:5 57:14 63:8,14
lawyer's 10:17 58:14
lead 18:23
leading 72:9,10,20
learn 68:7
leave 52:5
legal 41:5 55:11,24 58:18
letter 3:6,7 7:22 12:8 28:4,5,7 29:2,4
29:6,10,11 30:17 31:20 33:7 37:24
38:2,11,12 39:6,6,15,23 40:8 44:19
46:3 49:14 52:7,10 56:11,11,19
63:10 64:3,12,17 66:19 67:13
72:15,17 74:3,19,21
letters 6:16 27:17,21 29:16 31:11,14
32:8,20 33:3,5,11 36:2 38:16 43:19
46:19,24 57:7,11 58:24 59:8 71:17
let's 21:5 52:9 69:22
level 23:5
liability 40:17
line 3:2,6,10 18:10 65:16
lines 67:1
list 70:3
listed 69:18,24
Listen 40:1
listings 67:23
lists 41:23
live 5:18,23
lived 5:21 20:11,12
Lombard 2:6
long 5:21 23:21 24:3 29:6,7 72:3
longer 29:19
look 6:3,11,14 7:19 32:22 33:9,16
36:22 49:6 50:23 52:9,14 53:21
69:3,8 70:6
looked 61:20 71:18
looking 6:5 47:8
looks 59:22
lost 47:11 57:6,10
Lucas 23:18,22,24 24:5 25:7

**M**

mail 8:22 9:1 26:14,15 29:16 30:2
31:9,10 33:12 59:8
major 23:11
majority 62:22
making 18:12 54:4
man 17:20
mark 7:1,9 8:3
marked 7:6 27:23 28:6,7,19,22 32:9
35:15 37:6 39:15 41:23 57:8,11

59:14,19 70:7
marking 8:13
married 58:1,3
material 12:16
matter 16:24 36:5,6,9
mean 17:22 34:21 35:13 46:24 49:8
49:10 50:6,21 58:23 59:2 65:5,9,12
means 35:14 65:7,8 69:10,13
medications 48:10
memory 6:1 48:11
mentioned 43:18
Mercury 24:21,24
merits 22:1
middle 5:14 33:23
minor 20:14 25:22
minors 22:16
minute 58:5
minutes 53:20
Misleading 34:15
misstates 33:20 34:15 47:5
mistake 54:18
moment 61:23
money 30:24 31:7,21 33:4 38:8 57:7
57:11 68:11
morning 5:7
mouth 49:19
move 12:7 17:4
multiple 43:8 56:17 64:20 68:5,5
municipal 3:8 40:12,22 41:13
mutual 66:15

**N**

N 3:1
name 3:2 5:7,10,14 8:14 10:17,20,21
17:15,16 19:4 22:18 37:9 43:3 49:2
Nancy 2:18 32:3
Nate 19:16 20:23
Nathan 2:4 20:3,9 44:11 54:17 68:19
nature 34:12
need 12:7 16:19 22:6 62:19,23 75:11
negative 59:5
negotiate 62:17
never 47:12 48:8 51:13,17,19 53:11
Nope 24:9 58:2
North 2:10
NORTHERN 1:1
Notary 1:18 77:3 78:7
notice 33:14 44:17
noticed 33:7
Nowak 2:9,9 6:11,18,21,24 8:7 28:2
28:13,13,17 49:20 54:9,19
number 8:8,15 37:9 38:16 40:11 45:4
67:24

**O**

oath 61:1
object 9:14,16 15:10 18:18 22:6
objecting 11:3
objection 11:9 12:3 14:6,14 15:2,20
15:21 16:3 17:5 22:20 24:22 26:17
26:24 27:8 30:5,18 31:1 32:11
33:18,20 34:1,5,9,14 40:24 41:4,16
45:18 46:5,20 47:4,18 48:4 50:8,11
55:8,10,23 56:6 57:19 58:17 62:6,7
63:17 72:9,11,19 74:7 75:2
objections 3:10 12:13
obligations 69:23
obtain 42:13,17
obviously 47:2
office 2:13 24:1 78:3

officer 25:15
OFFICES 2:9
Oh 6:1 30:3
Ohio 1:1,16 2:10,15 5:20 6:2 76:19
77:4 78:3,7
okay 6:8 7:22 9:22 11:14 14:10 20:8
20:17 21:2,11 22:7,11 27:12,20
31:13 36:14 37:1,5,14,19 41:3,9,18
41:22 43:3,10 46:9,23 48:10 49:2
49:22 50:14 52:24 55:14 56:10
58:20 59:10,12,24 60:11 61:3,18
61:24 63:21 66:11,18 70:6,24
74:10
old 5:16
once 13:22 16:2 18:11 25:5 37:21
38:18 42:12 53:13 59:9 60:4 63:21
64:14
ones 68:16
ongoing 26:21
Ordered 70:12
original 3:6 34:7,9,12,18,22
originally 10:18,19
originals 7:12,13,15 35:16,19 36:5,6
36:8,12,14,19 45:6
owe 63:15 65:8,9,13 68:10,13
owed 39:19 49:15 53:11 62:3 64:4
69:23 73:16
owns 43:21

**P**

page 3:2,6,10 36:22 37:5 44:8 49:6
52:8,11,20 53:12,20 56:17 64:20
67:23 69:3,9,9,19 72:18 76:1,17
pages 44:7,7,8 76:4
page(s) 76:3,17
paid 14:12 35:9 65:8,15 66:3,12,21
67:4,17
paper 6:4,5,6 44:9
papers 6:8
paragraph 70:9,10
Pardon 8:24 35:3 42:15 65:11
Parker 2:18 32:3
particularly 72:17
parties 77:18,19
Pause 19:23
pay 15:17 31:20 40:22 41:13 58:9
65:20 66:14
paying 15:7
payment 60:2 67:14
payments 38:20,24 39:2 42:20 43:12
61:6,9 67:4,16
pending 57:18
people 13:21 19:20
person 17:18 21:22 32:8
pertinent 11:16,18 19:1
pester 59:2
phonetic 17:13
piece 6:4
pieces 44:8
place 1:15 35:12 77:14
places 38:24 52:7
plaintiff 1:4 2:2 5:2 20:4 28:21 63:12
70:14
plan 13:23
plant 24:3,5 25:8
play 63:19
playing 22:9
please 5:10,12 6:9 7:20 12:7,15,17
14:2 15:14,15 16:10,14 17:15
18:11 21:6,22 22:19 23:1 28:12 30:7

30:14 33:24 36:10 46:11 47:7 60:9
76:17
plus 61:16 70:15,22 73:14
point 11:6 28:23 55:19 67:8 73:3
poorly 59:6
position 23:19 25:13
possession 26:7
possibility 33:3
prefer 21:7
presence 77:9
present 2:17 20:1 32:4
pressuring 46:18
prevent 48:19
prevented 48:20,20
principal 35:7 37:10 49:7,8,14 50:2,5
51:6 52:17 53:1,4,22 58:10 64:23
65:4,7 66:20 67:3 72:24
principals 34:20
printed 8:19,20
privilege 12:4,20 14:7,15 15:3,21
16:4 27:9 45:19 46:6
privileged 13:3
probably 7:17,17 16:17 24:11 36:4
36:13,17,21 39:20 55:22 56:8,23
65:14 67:8
problem 28:17
proceed 18:18
produced 44:15
projects 66:9
protected 12:22
provide 66:4
provider 24:19
Public 1:18 77:3 78:7
put 8:15 52:4,6 55:21
p.m 75:15

**Q**

qualified 77:5
question 9:21 10:10 14:9,17 15:14,23
16:6,10,14,16,20,23 17:10 21:2
27:10 30:10,14 36:10,16 44:15
45:7,21 46:7 47:11 54:3,6,8,16
60:10,12,20 64:10,13 72:10
questions 9:16 10:9,24 11:2,13,16,18
12:8,10 13:24 17:22 18:17,22 22:3
22:6 60:22 61:2 62:21 68:19 72:16
73:5,8 75:7
Quiroga 2:18 32:3
quite 45:5

**R**

R 77:1
raise 62:19
Randy 2:18 32:3
rate 55:6
read 33:5,11,14 44:6 49:13 50:4
61:23 70:10,11
reading 53:19 70:20
reads 73:23
really 11:3 43:20 46:17 61:20 70:22
73:23 74:17,17
reason 38:21 44:12,21 74:13
recall 38:7,14,18 39:4 51:11 58:8
64:18 67:6 71:20
receive 9:7,11 43:17
received 29:1,16 30:2,24 31:6,20
38:12 39:5,23 57:11 64:3 74:5,19
receiving 30:17 57:7 59:7
recess 7:9 32:2 59:13,17
record 7:5 12:14 13:21 18:14 19:9,22

21:6,8,9,12,12,14 28:2,4,18 34:2
39:1,18 59:11,18 70:11
**recordings** 40:3,5
**records** 38:15,19
**reduced** 77:9
**reference** 37:9 47:20 67:2,24 71:17
72:18
**referring** 54:12
**refers** 69:16
**reflect** 21:12
**refuse** 30:15
**refusing** 16:15,20 61:5
**relationship** 26:22 27:3
**relative** 77:17,18
**relevance** 15:10 22:21 30:6,9,12,19
31:2 57:20 60:14 63:18
**relevancy** 61:11
**relevant** 12:16
**remain** 41:14
**remember** 6:4 10:4,14 24:13 40:2
42:12 44:10 45:11,14
**rendered** 55:17 58:11
**repeat** 41:10
**reporter** 1:17 7:6 13:9,17,20 18:3
19:19 21:22 28:21 31:24 59:14
75:11
**reporting** 1:15 76:18 77:21
**represent** 5:8
**required** 44:18
**reserved** 75:16
**residential** 66:7,8,10
**respect** 21:13
**responded** 45:10
**restate** 54:16
**result** 57:7
**return** 76:17
**Re-Examination** 3:4 73:11
**ridiculous** 10:24 17:22
**right** 6:10 8:3 11:17,19 17:7 18:22
20:9 26:3,10 27:19,19,24 28:1
29:20,21 31:15,17 33:16 34:8
35:17,20 36:15 37:12 39:10,13
42:14,17 43:21 45:22 47:3,9,14
48:18,22 49:3,5,12 50:2,20 51:1,2,6
51:13,15,18,19,21 52:11,15 53:4,8
53:10,11,12,16,23 54:22 55:2,7,21
56:5,12 58:24 59:2 61:17,19 62:4
63:9 64:23 65:16,18,24 66:13,16
66:23,24 68:2,18 71:23 72:8 73:24
74:1,5,16
**RMR-RDR** 1:17 78:6
**road** 35:9
**Robie** 1:3,12 3:3 5:1,11 76:6
**room** 34:7
**rows** 64:20
**rule** 77:23
**run** 43:4
**R-o-b-i-e** 5:13

**S**
**S** 2:9,9
**sake** 30:3
**satisfied** 59:23 62:1 66:22
**satisfy** 61:9
**saw** 8:18
**saying** 35:8 45:10 54:11 68:14
**says** 8:4,13 34:19 35:7,8 36:23 38:15
39:16 49:7,24 61:19 63:10,11 69:4
70:22
**Scheer** 63:9 64:4

**school** 23:8
**Schreiner** 1:17 77:3 78:6
**seal** 78:3
**seated** 6:8
**second** 19:9 28:6 37:5 49:6 54:13,20
56:17 64:19 67:23 69:3
**seconds** 9:18
**Security** 24:2
**see** 6:3 8:4 10:3 11:3 28:22 36:24
37:1,6,12,15,18 39:18 42:1 49:24
50:20 52:10 61:13 65:3 67:22 68:1
69:6,19
**seek** 55:6
**seeking** 51:20 52:2 55:1
**seen** 8:17 9:24 43:11
**send** 10:13 26:9,15 29:4 31:11,14
32:21 40:6 52:6,7,8,13 64:12,17
**sent** 8:20 10:6 26:8,14,22 27:6 32:16
38:8,16 42:7 51:3 53:24 63:14 74:4
**sentence** 70:17,21
**September** 1:14 76:2 78:4
**service** 1:15 66:4 67:24 68:4 76:18
**services** 15:18 42:14,17,20 43:12
58:11
**set** 78:2
**share** 6:9
**sheriff** 23:20,21 25:7
**sheriff's** 23:18 24:1 25:9,12,14,17
**show** 24:22 64:22
**showed** 71:14 74:22
**showing** 37:23 53:1,2
**shown** 71:4,5,8
**shows** 52:1 66:19 67:23
**shucks** 6:1
**sic** 8:11
**sign** 42:19,22 75:13
**signature** 75:12,16 76:1,17
**signed** 43:11 58:8 71:6,9,11 76:17
**sir** 49:21
**sit** 50:4
**sitting** 34:7 53:19
**six** 37:7
**skip** 67:1
**Small** 37:1
**Snyder** 60:19,23 61:4,7,12 62:15 63:7
**something's** 33:9
**sorry** 25:10 28:9 29:8 31:17 34:2
54:14 71:6
**sought** 25:19
**sound** 19:21
**South** 2:5
**speak** 13:10 19:10 22:1 45:1
**speaking** 12:13 28:11,11 34:11
**specifically** 12:9
**specified** 77:15
**speculation** 50:11 74:8
**speeches** 12:14 18:12
**spell** 5:12 17:15,16 22:24
**spelled** 17:17
**spent** 57:7
**spoke** 27:15 29:7 33:5
**spoken** 38:5
**stamp** 26:2
**stands** 73:22
**stated** 73:14
**statement** 54:4
**STATES** 1:1
**statutory** 61:16 70:15
**stay** 21:8
**stayed** 40:16

**stenotype** 77:9
**steps** 68:3,7
**stop** 18:12
**stopping** 64:8
**Street** 1:16 2:10 6:2 20:12 76:19
**Strike** 71:6
**string** 8:14
**study** 23:10
**stuff** 21:4
**sue** 47:2,10 48:2
**sued** 24:8,10,12,14,18,21 40:13 45:10
47:12 48:8
**suffered** 58:16
**suing** 45:14
**suit** 47:17 55:5,18 63:8
**Suite** 2:5
**sum** 70:15
**Summit** 2:10
**supposed** 10:8 43:4
**sure** 38:23 39:20 57:16,23 59:3 64:7
68:12,13,14,15,16 73:23
**sworn** 5:3 77:6
**System** 1:15 38:6,9,13,15,19 39:2,8,22
40:4,7 42:10 44:3 51:4,8,19 52:2
53:7 55:1 66:12 67:13,18 74:20
**Systems** 3:6,7 6:7 7:21 38:4

**T**
**T** 77:1,1
**table** 37:15
**take** 13:21 59:11 61:8,23
**taken** 35:22 48:10 53:20 68:3,7,15,16
77:14
**talk** 31:8 51:16,23
**talked** 51:17 53:13
**talking** 19:20 27:18 35:4 46:16,18
47:19,21 51:12 54:15 67:6 74:3
**tallied** 52:21
**tally** 37:16
**Tech** 23:9
**technical** 56:18
**Ted** 18:11
**Teddy** 2:3 18:13,15,16 19:7,13,16
20:6
**telephone** 40:4
**telephonic** 34:3
**tell** 30:16,23 33:9 43:20 44:5 51:11
51:17,23 58:15,23 63:6 73:23 77:6
**telling** 39:17 63:15
**testified** 45:5
**testimony** 18:23 33:20 34:15 45:11
47:5 77:8,11
**text** 50:23
**thank** 6:12 28:9,15 30:7 49:22 72:13
73:9 75:7,10
**thing** 65:17,21
**things** 22:2
**think** 11:5 19:9 29:5 44:3 46:17 48:9
48:12 54:10,11 58:5 59:4,6 67:16
68:18 71:13 74:13
**three** 19:20 44:7
**time** 8:18 11:6 13:10,18 15:16 18:4
19:20 21:23 31:4 48:24 50:7,16
51:2,3,7 53:5 55:3 67:11 72:13
73:3 75:9 77:14
**times** 24:12 25:4
**today** 20:14 44:13,19,24 49:14 50:4
52:11 57:10 62:4 71:4,9,18 74:15
75:9
**told** 6:6 31:6,19,19 32:19,21 36:1,16

36:20 47:12 51:4,8,14,19 53:11
**Toledo** 1:6,16 2:10 3:8 5:19 6:2 23:9
24:14,16 25:20,23 38:6,9 39:3,12
39:14,16,22 40:11 41:13 42:8,13
42:16,19,22,24 43:1,2,7,9,11,17
44:1 49:15 51:4,8,19 52:2 53:7
55:4,18 58:7 63:13 65:4 67:2,10,14
67:17 69:23 70:3 71:9,12 74:20
76:19 78:3
**total** 36:23 37:10,12 41:23 52:14
53:15 54:21
**touch** 64:7
**transcribed** 77:10
**transcription** 77:11
**treating** 67:9
**treatment** 25:19,23
**tried** 21:13
**true** 72:7 77:11
**truth** 77:6,7,7
**truthfully** 17:11
**try** 69:1
**trying** 12:14 17:24 18:1 22:9 47:22
**turn** 34:24 37:5
**turned** 60:16 62:15 63:22 64:1,6
**two** 5:22 13:21 22:15 27:17,21 32:8
39:16 43:19 44:7 45:4 49:16 50:5
57:7 58:24 59:8 71:17 73:7
**type** 52:21

**U**
**Uh-huh** 37:8,11 44:20 45:12 49:17
50:3 56:13 64:21,24 65:19
**ultimately** 40:17
**understand** 10:10 17:9 20:23 39:5
49:14 53:19 60:7 62:20 73:15
**unfolding** 6:14
**unfortunately** 34:10
**UNITED** 1:1
**University** 23:9
**upset** 22:3
**upsetting** 22:5
**use** 9:6

**V**
**Vague** 47:18
**various** 40:13
**videoconference** 2:18,18 32:4
**voice** 62:19
**Volheim** 2:4 3:4,17,17,18,18,19,19,20
3:20,21,21,22,22,23,23,24 4:1,1,2,2
4:3,3,4,4,5,5,6,6 19:7,13,16,18 20:2
20:3,22 21:5,11,18,24 22:20 24:22
26:17,24 27:4,8 28:10,15 30:5,18
31:1 32:11 33:18 34:1 40:24 41:4
41:16 44:14,20,23 45:18 46:5,20
47:4,18 48:4 50:8 54:1,7 55:8 56:6
57:19 58:17 60:13 62:6 63:17
68:24 72:12,14,22 73:4 74:7 75:2,8
75:13
**vs** 1:5

**W**
**W** 2:13,14
**wait** 29:7 34:3,4 58:5
**Walnut** 5:19,24
**want** 6:24 18:22 21:8,9,19,24 22:24
33:1 34:6 45:20 46:13 49:6 54:10
56:17 59:3,11 60:17 68:10,14
**wanted** 28:18
**wants** 19:10 21:14 22:2

**Washington** 17:12,17,20 18:2 19:3
  25:6 26:16 29:3,8,12,20 30:16
  31:19 32:7 33:2,6,15 46:3
**Washington's** 25:13
**wasn't** 35:11 51:24
**wasting** 11:6 21:3
**water** 49:21
**way** 15:1 59:6 64:14
**ways** 62:22
**web** 2:3,4,14 20:1
**Welcome** 20:8
**went** 10:18,19 16:2 45:16 46:2 47:15
  67:13
**WESTERN** 1:2
**we'll** 13:20 17:1,2 18:18 75:13
**we're** 19:21 46:13 59:17 61:11
**we've** 19:19 65:7 71:17
**WHEREOF** 78:2
**within-named** 77:5
**witness** 3:2 6:17,20,23 8:10 9:22
  11:10,14 14:10,18,21 17:7,12 21:3
  22:11,23 23:2 24:23 26:19 27:7,12
  30:21 31:4,23 32:14 34:18 41:3,9
  41:18 46:9,23 47:24 49:22 50:14
  55:14 56:8 57:22 58:20 59:18
  60:11,16 62:9 63:21 72:21 74:10
  75:5,10,14 77:6,10 78:2
**woman** 17:20
**word** 49:10 50:20 70:13,18
**worded** 59:6
**work** 15:8 17:19 23:17 24:3
**worked** 25:6
**working** 25:16 48:19,21
**Worksheet** 76:23
**wouldn't** 73:19
**writing** 37:1 51:5 57:4
**wrong** 32:10 33:6,10,15
**wrongdoing** 33:3

**X**

**X** 3:1

**Y**

**yeah** 8:6 19:6 26:8 29:17 33:13 36:20
  39:8,11,14 42:2,18 46:17 48:16
  50:7 52:16 53:5 54:23 59:22 63:10
  65:24 66:1 71:15
**year** 10:16 40:1,2
**years** 5:22 23:23 24:4 69:22,22
**yell** 62:24
**Yep** 24:7 25:3,21
**yesterday** 9:13,22 10:1
**yield** 68:21

**Z**

**zero** 35:7,7,8,13 64:22 65:4,5,5,7
  66:20,20,20 67:3,3,3 73:14,15
**zeroes** 8:14 34:21,23 35:2,4,8 50:24
  50:24 68:17

**$**

**$1595.00** 70:15
**$208.59** 41:24 52:15,21
**$775.30** 36:23 37:17 53:15

**0**

**00002** 8:4
**003** 49:5
**03** 34:19

**1**

**1** 3:20 8:6,10,14 26:2 27:23 41:23
  69:9
**1,595** 61:14 62:3 73:14
**1-15** 8:1
**1-15-18** 3:7 6:19
**10** 1:14 23:23 76:2
**10:02** 1:14
**11** 3:4,12,21
**12** 3:13
**12:17** 75:15
**14** 3:8,12,13,14,14
**15** 3:14,15,15 29:2
**15th** 27:22 28:5 38:11 39:6
**1595** 70:22
**16** 3:16,22
**17** 3:16,18 4:4,5
**18** 3:20,21,23 4:1 8:1,2
**19** 3:11 4:4

**2**

**2** 3:14 4:6 8:6,11,14 27:22 35:16 69:9
  69:19 70:9 72:18
**20** 3:15,17,24
**200** 2:5 42:7
**2004** 23:16,17 48:22
**2007** 23:16
**2018** 27:22,24 28:5,7 38:11 39:6,10
  39:23 52:10 56:11 58:4
**2019** 1:14 76:2 78:4
**2021** 78:9
**22** 3:17,17
**23** 3:4 4:3
**23rd** 78:4
**24** 3:17,18,22 48:11
**2500** 2:5
**255-1010** 76:20
**26** 3:18,18 78:9
**27** 3:19
**28093870001** 67:2

**3**

**3** 3:13,16 8:4,15 26:2 35:16 37:6
**3:18-CV-02642-JJH** 1:6
**30** 3:19,20
**31** 3:20
**32** 3:21
**33** 3:21

**4**

**4** 4:1
**4-05-18** 6:22
**4-5** 8:2
**4-5-18** 3:8
**40** 3:22
**4031** 2:14
**41** 3:22
**419** 2:11 76:20
**43** 6:2
**43604** 76:19
**43611** 2:10
**43615** 5:20 6:2
**45** 3:23
**45431** 2:15
**46** 3:23,24
**47** 4:1
**48** 4:1
**4808** 2:10

**5**

**5** 3:3,3,16,19,23
**5th** 27:24 28:7 52:10 56:11
**50** 4:2
**55** 4:2,3 5:17
**56** 4:3
**57** 4:4
**575-8181** 2:6
**58** 4:4
**59** 3:8
**5923** 5:19

**6**

**6** 3:6,7,13 4:3,5
**60148** 2:6
**615** 1:16 76:19
**62** 4:5
**63** 4:5
**630** 2:6
**6543** 5:24
**68** 3:4

**7**

**7** 3:6,7 4:6
**72** 3:11,11
**726-2605** 2:11
**73** 3:4
**74** 4:6
**75** 4:6
**775.30** 37:13

**8**

**8** 3:19 4:2,2
**839-2881** 2:15

**9**

**9** 3:11,12,12,15
**937** 2:15



**FINANCE SYSTEM OF TOLEDO, INC.**
PO Box 1934
Southgate, MI 48195-0934

IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW.

☐ MasterCard  ☐ Discover  **VISA**  ☐  ☐ American Express*

CARD NUMBER

SIGNATURE

MUST INCLUDE 3 DIGIT SECURITY CODE FROM BACK OF CARD  EXP. DATE  AMOUNT

AMOUNT DUE: $775.30          SHOW AMOUNT PAID HERE  $
DATE: 01/15/18
Phone: (419) 578-4343 * Toll Free: (888) 665-6665 *Fax (419) 578-4330

CREDITOR: SEE REVERSE SIDE
FST ID NUMBER: 0009002280

MAKE CHECKS PAYABLE TO:

Roble Gaston
6543 Dorr St Apt G43
Toledo, OH 43615-4217

FINANCE SYSTEM OF TOLEDO, INC.
PO BOX 351297
TOLEDO, OH 43635-1297

---

*** PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT ***

DATE: 01/15/18                          FST1/IT04    643019010724    1312/0001179/0003

CREDITOR: SEE REVERSE SIDE
TOTAL AMOUNT DUE: $775.30
FST ID NUMBER: ████2260

THIS BILL MAY BE LISTED AGAINST YOUR CREDIT!

IT IS IN YOUR BEST INTEREST TO RESPOND IMMEDIATELY. ANY UNPAID BALANCE SHOWING ON YOUR
CREDIT REPORT MAY RESULT IN CREDIT BEING DENIED.

PAY IN FULL IMMEDIATELY TO:

FINANCE SYSTEM OF TOLEDO, INC.

PLEASE DO NOT HESITATE TO CONTACT ME TO RESOLVE THIS IMPORTANT MATTER.

MRS. MEGAN STARR
419-578-2676

PLEASE SEE REVERSE SIDE FOR ACCOUNT INFORMATION.

MAKE YOUR PAYMENT ONLINE AT www.FST1952.COM
* USING FST ID NUMBER: 0009002260



DEF. ___A___
DATE ___9-10-19___
RPTR ___
Collins Reporting

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT
PURPOSE. ALL RETURNED CHECKS ARE SUBJECT TO A $30.00 SERVICE CHARGE PLUS BANK FEES.



**FINANCE SYSTEM OF TOLEDO, INC.**
2821 N. Holland-Sylvania Rd.
PO Box 351297
Toledo, OH 43635-1297
Phone: (419) 578-4343 * Toll Free:(888) 665-6665
Fax: (419) 578-4330

GASTON 000002

Page 1 of 2/T04

| Client Name | Client Ref No | Principal | Interest | Other | Total |
|---|---|---|---|---|---|
| EPWO INC TOLEDO | ████500 | .00 | .00 | .00 | .00 |
| DATE OF SERVICE 12/25/12 | | | | | |
| ALLSTAR DISPOSA | | .00 | .00 | .00 | .00 |
| DATE OF SERVICE 11/11/14 | | | | | |
| TOLEDO CLINIC I | ████0001 | 734.16 | .00 | .00 | 734.16 |
| DATE OF SERVICE 01/16/14 | | | | | |
| TOLEDO CLINIC I | ████0001 | .00 | .00 | .00 | .00 |
| DATE OF SERVICE 01/14/15 | | | | | |
| TOLEDO CLINIC I | ████786 16019 | 41.14 | .00 | .00 | 41.14 |
| DATE OF SERVICE 12/28/16 | | | | | |

775.30

GASTON 000003



**FINANCE SYSTEM OF TOLEDO, INC.**
PO Box 1934
Southgate, MI 48195-0934

IF PAYING BY MASTERCARD, DISCOVER, VISA OR AMERICAN EXPRESS, FILL OUT BELOW:

☐ MasterCard ☐ Discover **VISA** ☐ VISA ☐ American Express®

CARD NUMBER _____ EXP. DATE ____ AMOUNT ____

SIGNATURE _____

YOUR SIGNATURE IS YOUR SECURITY CODE FROM BACK OF CARD

| AMOUNT DUE: $208.59 | SHOW AMOUNT PAID HERE | $ |
DATE: 04/05/18
Phone: (419) 578-4343 * Toll Free: (888) 665-6665 * Fax: (419) 578-4330

CREDITOR: TOLEDO CLINIC INC
CLIENT REF#: 200095786 2622845     FST ID NUMBER: 0009142510

MAKE CHECKS PAYABLE TO:

Rodie Gaston
6543 Dorr St Apt G43
Toledo, OH 43615-4217

FINANCE SYSTEM OF TOLEDO, INC.
PO BOX 351297
TOLEDO, OH 43635-1297

*** PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT ***

DATE: 04/05/18
CREDITOR: TOLEDO CLINIC INC
CLIENT REF#: 200095786 2622845
TOTAL AMOUNT DUE: $208.59
FST ID NUMBER: ██████510

## THIS BILL HAS BEEN PLACED FOR COLLECTION BY

## TOLEDO CLINIC INC

MAKE YOUR PAYMENT ONLINE AT www.FST1952.COM
* USING FST ID NUMBER: 0009142510



DEF. **B**
DATE 9-10-19
RPTR
Collins Reporting

### IMPORTANT CONSUMER NOTICE

UNLESS YOU NOTIFY THIS OFFICE WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE THAT YOU DISPUTE THE VALIDITY OF THIS DEBT OR ANY PORTION THEREOF, THIS OFFICE WILL ASSUME THIS DEBT IS VALID. IF YOU NOTIFY THIS OFFICE IN WRITING WITHIN 30 DAYS FROM RECEIVING THIS NOTICE, THIS OFFICE WILL OBTAIN VERIFICATION OF THE DEBT OR OBTAIN A COPY OF A JUDGEMENT AND MAIL YOU A COPY OF SUCH JUDGEMENT OR VERIFICATION. IF YOU REQUEST THIS IN WRITING WITHIN 30 DAYS AFTER RECEIVING THIS NOTICE, THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR, IF DIFFERENT FROM THE CURRENT CREDITOR.

THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. ALL RETURNED CHECKS ARE SUBJECT TO A $30.00 SERVICE CHARGE PLUS BANK FEES.



**FINANCE SYSTEM OF TOLEDO, INC.**
2821 N. Holland-Sylvania Rd.
PO Box 351297
Toledo, OH 43635-1297
Phone: (419) 578-4343 * Toll Free:(888) 665-6665
Fax: (419) 578-4330

GASTON 000001

● The Municipal Court of Toledo ●

Lucas County, Ohio



CVF-18-15091

TOLEDO MUNICIPAL COU~

City of Toledo Camera Violation

J.E. Tenderson

2019 JAN -8   JUDGMENT ENTRY

**PLAINTIFF**

DEC 0 4 2018

TOLEDO MUNICIPAL COURT

CASE NO.  CVF18-15091
CLERK

-vs-

ROBIE GASTON

**DEFENDANT**

: Scheer, Green and Burke, Co. L.P.A.
  **Attorneys for Plaintiff**
  **Business location:**
: One Seagate, Suite 640
  Toledo, Ohio  43604
  **Mailing address:**
  P.O. Box 1335
: Toledo, Ohio  43603
  Phone: (419)243-2283
  FAX: (419)463-9139
: (Michael J. Burke - 0001284)
  (Hal D. Burke - 0069015 )

This cause came on for hearing upon plaintiff's Complaint and the
Court finds that the defendant is in default for answer or other
pleading and plaintiff is entitled to a judgment.

It is therefore, **ORDERED, ADJUDGED AND DECREED** that the plaintiff
have judgment against defendant in the sum of $1595.00 plus statutory
interest and court costs. Upon any payment, Plaintiff shall immediately
forward any outstanding court costs to the Toledo Municipal Court, Clerk
of Courts.

Judge

APPROVED:

ATTORNEY FOR PLAINTIFF

JOURNALIZED SMG DEC 1 3 2018

File #:   08744689

DEF.  C
DATE 9-10-19
RPTR
Collins Reporting

JAN 0 8 2019